[Crim. No. 10887.   In Bank.   July 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK W. CRAMER, Defendant and Appellant.

Kenneth H. Wechsler, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien, Ronald H. Kearney, Derald E. Granberg and Frank C. Damrell, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—Defendant was convicted by a jury of a violation of section 288 of the Penal Code. He was granted probation. He appeals from that order contending that prejudicial evidence was erroneously admitted at his trial. The contention is without merit.

The testimony of Phillip, age 13, the complaining witness, was to the following effect: Early in April 1965, he met defendant when defendant's stepbrother, age 18, asked him if he wanted an automobile ride. Defendant was driving the car, and Phillip entered the car. He asked defendant to pick up Bobby, a friend of Phillip's. Phillip said he wanted to go home, but after defendant asked if the boys wanted to go swimming, they agreed and went to a house in Brentwood, where defendant worked. At the house, they swam, and defendant served Phillip vodka and 7-Up and showed him some Playboy magazines. Phillip went to the house in Brentwood on one or two other occasions with defendant, Bobby and another friend, Ronnie, age 14. On one occasion James may have been there although Phillip was not sure. On three or four occasions, Phillip also went to defendant's house in Venice with other boys, watched television, played records and looked at magazines. Phillip was served beer there. On one occasion, Phillip went to the Venice house with Ronnie. While Ronnie and defendant's stepbrother were playing with a tape recorder in the bedroom, defendant came in and asked them to leave. After they did, defendant commenced rubbing his hands over Phillip's genitals, told him to pull down his pants and to lie on the bed, removed his undershorts, and then engaged in an act of oral copulation.

There was some impeaching testimony. Ronnie testified that on the occasion he went with Phillip to defendant's house in Venice, they were served beer; that during the entire time they were there Phillip left the living room only once to go into the kitchen for a minute or two; that the kitchen was connected to the living room by a doorway although there was no door there; that he did not hear any doors slam after Phillip went into the kitchen, and that after Phillip returned he did not make any complaints. Ronnie also said that only he, Phillip, and defendant were in the house on that occasion.

Defendant, who is 28, denied touching Phillip's genitals or committing any act of oral copulation. He testified that Phillip came to his house on two occasions, that on the first occasion Phillip was there for 10 minutes during which time defendant was outside the house taking care of some dogs,

that after defendant finished he went into the house only to close the door, and that they all then left. Defendant said that on the second occasion Phillip and Ronnie came to see his stepbrother, that they stayed about an hour, that the boys played the phonograph, that he left the living room with Phillip to go into the kitchen for a minute or a minute and a half to fix Phillip a coke, and that he did not at any time go into the bedroom with Phillip. Defendant also testified that there was a "little bit of showing off involved" in taking Phillip and Bobby to the Brentwood house, where he was employed, that he went swimming with the boys at the Brentwood house, and that he served them a "very small amount" of vodka there.

This was all the evidence introduced as to the crime charged. The prosecution, after defendant's objections were overruled, in its case in chief, then introduced evidence of another offense claimed to have been committed with James. The latter was 15. He testified that he was swimming at the Brentwood house early in April with defendant, the latter's stepbrother, Phillip, and Bobby; that, while swimming, defendant squeezed his testicles, and that when he left the pool defendant followed him into the dressing room and committed an act of oral copulation upon him. James also said that he had previously suffered a rupture which occurred when a girl kicked him in the groin, and that as a result of defendant squeezing his testicles he sought medical treatment.

There was also other evidence admitted over defendant's objections. Ronnie's mother and Bobby's mother were permitted to testify that they went to defendant's home about 10 p.m. on a night early in April. Defendant answered the door and, when asked, denied that his name was Cramer. Defendant then told Ronnie's mother to leave or he would sue her, but after she demanded to see her son, defendant said to wait and went back into the house. In a few minutes she heard her son scream, and he was pushed out of the back door. The police were called. Ronnie testified that prior to answering the door defendant had been in the living room with him, defendant's stepbrother, and another youth, 17 or 18 years of age, that after defendant answered the door, someone said, "run out, quick, your mother is here," and that one of the boys gave him a little shove. Ronnie said that it was not defendant who said to leave and gave him the shove.

Defendant denied committing the act of oral copulation with James, and denied that he had told the boys' mothers

that his name was not Cramer, testifying that after he went back into the house he searched and did not find Ronnie.

Was this evidence admissible? It was. The general rule is that evidence of other crimes is inadmissible if offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged. The evidence is then excluded because its probative value is outweighed by its prejudicial effect. (*People* v. *Hill*, 66 Cal.2d 536, 556 [58 Cal.Rptr. 340, 426 P.2d 908].) The purposes of the exclusionary rule are to avoid placing the accused in a position where he must defend against crimes for which he has not been charged and to guard against the probability that evidence of other criminal acts having little bearing on the question whether defendant committed the charged crime would assume undue proportions and unnecessarily prejudice defendant in the minds of the jury, as well as to promote judicial efficiency by restricting proof of extraneous crimes. (*People* v. *Kelley*, 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947] ; see also *People* v. *Albertson*, 23 Cal.2d 550, 577 [145 P.2d 7].)

There are certain situations where the evidence is sufficiently relevant, and may be admitted even though it embraces evidence of the commission of another crime. When a claim is made that evidence of other crimes should be admitted as an exception to the general rule, the relevancy of the evidence and therefore its admissibility must be examined with care in view of the sound reasons behind the general rule of exclusion. (*People* v. *Kelley, supra*, 66 Cal.2d 232, 239 ; *People* v. *Peete*, 28 Cal.2d 306, 316 [169 P.2d 924].)

It is settled that evidence of other crimes is ordinarily admissible where it tends to show presence of a common design, plan, or *modus operandi*, and we recently recognized in *Kelley, supra*, that this rule applies to sex offenses committed with persons other than the prosecuting witness. We there pointed out that, although charges of sex offenses are often unreliable and particularly difficult to disprove, such evidence is admissible as showing a common scheme or plan where the offenses are not too remote, are similar to the offense charged, and are committed with persons similar to the prosecuting witness. (*People* v. *Kelley, supra*, 66 Cal.2d 232, 240-243.)

Several decisions have held that the test of admissibility of evidence of another offense offered to prove common design, plan, or *modus operandi* is whether there is some clear con-

nection between that offense and the one charged so that it may be logically inferred that if defendant is guilty of one he must be guilty of the other. Or as the matter is sometimes stated, the other offenses offered to prove pattern, scheme, or plan are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the act charged. (E.g., *People* v. *Lane,* 100 Cal. 379, 386 [34 P. 856]; *People* v. *McCarty,* 164 Cal.App.2d 322, 325-326 [330 P.2d 484]; *People* v. *McCullough,* 158 Cal.App.2d 310, 313 [322 P.2d 289]; *People* v. *Lapin,* 138 Cal.App.2d 251, 259 [291 P.2d 575]; *People* v. *Grimes,* 113 Cal.App.2d 365, 370 [248 P.2d 130].) Other cases have spoken of a "peculiar or characteristic behavior pattern" (*People* v. *Cavanaugh,* 44 Cal.2d 252, 266 [282 P.2d 53]; *People* v. *Crisafi,* 187 Cal.App.2d 700, 707 [10 Cal.Rptr. 155]), "bizarre details" (*People* v. *Malloy,* 199 Cal.App.2d 219, 234 [18 Cal.Rptr. 545]) and "striking similarities" (*People* v. *Ing,* 65 Cal.2d 603, 612 [55 Cal.Rptr. 902, 422 P.2d 590]; *People* v. *Whitehorn,* 60 Cal.2d 256, 263 [32 Cal. Rptr. 199, 383 P.2d 783]).

Tested by these standards evidence of the offense committed with James was admissible. There were sufficient similarities in the commission of that offense with the one charged to justify admission of the evidence. The record discloses that defendant who was 28 years of age sought out young boys for his victims and cultivated their friendship by using the Brentwood house and his home to entertain them. On these occasions there was always more than one boy present. The same general form of entertainment was offered. Prior to engaging in the prohibited act, defendant fondled the testicles of the boys. Although the criminal acts occurred at different places and alcoholic beverages were served to only one of the boys, it is unnecessary to prove that the prior offense is identical in every detail with the crime charged. (*People* v. *Perez,* 65 Cal.2d 615, 619 [55 Cal.Rptr. 909, 422 P.2d 597].)

■ Defendant also urges that it was error to admit the testimony of the mothers of Bobby and Ronnie. The Attorney General argues that the evidence was relevant and admissible to show consciousness of guilt. This position is sound.

It is settled that acts of an accused may constitute an inference of consciousness of guilt, and, when they do, they are admissible in evidence as implied admissions. (See Witkin, Cal. Evidence (2d ed. 1966) § 511, p. 481.) Evidence of flight

and the use of aliases (*People* v. *Waller*, 14 Cal.2d 693, 702 [96 P.2d 344]), resistance to arrest (*People* v. *Flannelly*, 128 Cal. 83, 87 [60 P.2d 670]), false statements regarding incriminating circumstances deliberately made to arresting officers (*People* v. *Osslo*, 50 Cal.2d 75, 93 [323 P.2d 397]), and attempts to suppress evidence (*People* v. *Burton*, 55 Cal.2d 328, 347 [11 Cal.Rptr. 65, 359 P.2d 433]), have been held admissible on this theory. It would seem that evidence that an accused sought to deny his identity and conceal his relationship to a person who was aware of his unlawful conduct should also be admissible.

The incident to which the mothers testified occurred within a few days of the charged offense. At the time of the incident Ronnie who was present in the house at the time of the alleged offense, and thus a potential witness, was again present in the house, and the jury could reasonably believe that defendant denied his identity and Ronnie's presence because he was afraid that disclosure of the truth might prove harmful to him in the light of his criminal conduct. Under all of the circumstances, the trial court did not abuse its discretion in admitting the evidence.

The order appealed from is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.