[Crim. No. 3555.   Fourth Dist., Div. One.   July 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH FINLEY ARMSTRONG, Defendant and Appellant.

Peter B. Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter E. Wunderlich, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Joseph Finley Armstrong appeals his court-tried conviction of three counts of child molesting (Pen. Code, § 288). The court convicted Armstrong

March 20, 1964, suspended criminal proceedings and committed him as a mentally disordered sex offender. On March 18, 1968, this court voided Armstrong's commitments to the Department of Mental Hygiene and remanded proceedings to the trial court (*People* v. *Armstrong,* 260 Cal.App.2d 190 [67 Cal.Rptr. 73]).

The court again committed Armstrong as a mentally disordered sex offender who could benefit by treatment in a state hospital. Armstrong demanded a jury trial on the issue of sexual psychopathy. At the trial of this issue, Armstrong waived a jury, counsel stipulated he was not amenable to treatment and submitted the matter on the doctors' reports.

The court found Armstrong to be a mentally disordered sex offender not amenable to treatment and remanded him to the criminal court for sentencing.

This is a direct appeal from the conviction tried in March 1964. Armstrong's first two contentions are the court erroneously admitted in evidence admissions made by him to a police officer. His first contention is he was arrested on an unsigned arrest warrant which was also defective because not supported by an adequate affidavit (*People* v. *Sesslin,* 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321]). Armstrong's contention he was illegally in custody when he made the statements need not be decided because his second contention relating to the same statements is valid.

No evidence appears Armstrong was warned of his right to counsel or to remain silent under the *Escobedo-Dorado* rule, established a few months after Armstrong's conviction. Armstrong's extrajudicial custodial admissions were erroneously allowed in evidence. Both sides argue the issue of whether Armstrong may now raise *Escobedo-Dorado.* The Supreme Court has settled the matter in Armstrong's favor in *People* v. *Kellum,* 71 Cal.2d 352 [78 Cal.Rptr. 501, 455 P.2d 429].

The court's error requires a review of the entire record to determine whether the error was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

The three offenses charged against Armstrong were committed as follows: About three weeks before Christmas 1963, Doreen P., age eight, waited in front of Armstrong's house about 5 p.m. for one of her friends, Norma, to come out and play. Norma lived next door to Armstrong. Armstrong

grabbed her and pulled her into the house. His wife was not at home.

Armstrong took Doreen to an upstairs bedroom. He told Doreen to take off all her clothes. She did with reluctance. Armstrong told her to lie down on the bed. She again complied. Armstrong unzipped his pants and took out his penis.

While Doreen was on the bed Armstrong kissed her on the mouth sticking his tongue into her mouth. At Armstrong's request she sucked his tongue. He placed his finger in the area between her legs and also placed his mouth between her legs and sucked. At various times during the episode Armstrong made Doreen wiggle, kiss and suck his penis. Armstrong went to the bathroom at least once during the events to put vaseline on his penis stating he was going to try and stick it in.

Just before Christmas 1963, Debra C, an eight-year-old third grader, went to Armstrong's home to play with appellant's cat Tiger. While she was on the back porch Armstrong grabbed her, jerked her into the house, and went to the living room. He then placed his hand underneath Debra's clothing in the area between her legs and moved his hand about.

In the early evening of January 30, 1964, Barbara P. and Kathy P. played near the back door of Armstrong's home. Their sister, Doreen, saw Barbara and Kathy enter Armstrong's house through the back door.

Doreen saw her sisters and Armstrong in the kitchen through an open window. Kathy climbed up onto Armstrong's lap and he pulled up her dress, placing his hand inside her panties for several minutes. Appellant then placed Kathy down and told Barbara to get up on his lap. Armstrong then did the same thing to Barbara. He told Barbara and Kathy not to tell anyone what had gone on. Doreen then ran home and told her mother what had happened.

Mrs. P. told her oldest son to bring Barbara and Kathy home. Once home, Barbara told her mother Armstrong had touched her in the vaginal area. Mrs. P. examined both Barbara and Kathy and found their vaginal areas were reddened and irritated.

The trial court received evidence of seven similar acts by Armstrong on Barbara, Kathy and Doreen P., as well as on Debra's sister, Charlotte C. (age 9) and Judith W (age 12).

Armstrong denied all of the acts. Three statements by Armstrong were admitted in evidence erroneously under *Escobedo-Dorado*.

1. He talked to Judith W.; had been drinking and was asleep in his home if Judith was in the house.

2. He rested his hand on Kathy's leg.

3. He set children on his lap because he wanted his wife to sleep with him but she slept with those kids instead.

The first statement does not appear incriminating. The second may be. The third is damaging because a trier of fact could infer a sexual motive for Armstrong's placing children on his lap. However, the children's testimony, corroborated by Mrs. P., presented a very strong case to an experienced trial judge who, in summing up, stated he viewed the statements with caution. The court noted, however, Armstrong's statements were specific and were not attacked by Armstrong at trial.

In view of the strong prosecution evidence we believe Armstrong's statements were harmless beyond a reasonable doubt.

■ Armstrong contends the court should not have allowed evidence of other offenses because the other offenses were not similar. The People show a number of similarities, including nature of acts, place of operation and time of occurrence.

Armstrong contends the similarities relate to matters common to most all crimes of this nature. However, similarity of action and detail showing a discernible pattern, rather than uniqueness, is the appropriate test in this case.

Armstrong also contends no issue was raised at the trial of identity or intent. He simply asserted the girls' testimony was fabricated and he did not do the acts. It is not necessary a defendant raise issues before the People may meet them as the People have the burden of establishing intent and identity.

The other offenses here are not too remote (all were within a five-month period) and were sufficiently similar to show a common scheme or plan (*People* v. *Kelley,* 66 Cal.2d 232, 243 [57 Cal.Rptr. 363, 424 P.2d 947]). It was within the court's discretion to admit them (*People* v. *Haston,* 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 91]).

■ Armstrong contends evidence of a statement by Doreen P. made to a police officer regarding Armstrong's oral copulation with her was erroneously admitted in evidence. At the trial Armstrong sought to impeach Doreen's testimony by showing Mrs. Armstrong caught her playing kissing games with a neighborhood boy, told the boy's mother who told Mrs. P. The incident happened four days before trial. Mrs. P. confronted Mrs. Armstrong and told her to mind her own busi-

ness or she would have Mr. P. put Mrs. Armstrong "where her husband is."

The evidence tended to imply Doreen had a motive for fabrication or exaggeration arising four days before trial. The statement by Doreen was made before the police arrested Armstrong and was consistent with her trial testimony. Such evidence is properly received to rebut an inference her testimony was recently fabricated. (*People* v. *Hernandez,* 263 Cal. App.2d 242, 255 [69 Cal.Rptr. 448].)

The judgment is affirmed.

Coughlin, J., and Ault, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1969. Peters, J., was of the opinion that the petition should be granted.

*Assigned by the Chairman of the Judicial Council.