[Crim. No. 17009. Second Dist., Div. Two. Dec. 3, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE DALE WELLS, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard Lee Halm, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HERNDON, J.**—Defendant Jesse Dale Wells appeals from the judgment entered upon the verdict of a jury convicting him of child molestation (Pen. Code, § 288), and of assault with intent to rape (Pen. Code, § 220). Defendant was charged with three prior felony convictions: (1) burglary in 1949; (2) burglary and grand theft in 1944; and (3) burglary in 1960. He admitted the first two of the charged priors and the jury found the third to be true.

On the afternoon of September 26, 1967, Teresa, a 10-year-old girl, was walking home from school in Santa Maria by a short cut along the railroad tracks. Defendant ran up to her and asked what she was doing. She picked up a rock and replied that she was going to take it to school for her rock collection. Defendant said she was lying, lifted her up, told her to be quiet, and carried her to some bushes. She began to cry. Defendant lifted her dress, removed her panties, unzipped his pants, got on top of her, kissed her, and pressed himself between her legs for 10 to 15 minutes. Defendant then let her go, saying if she told anyone what had happened he might kill her.

Teresa's mother testified that Teresa ran home screaming and said that a man had tried to make her pregnant. Teresa was badly soiled with dirt, leaves, and a messy substance, and her vaginal area was red and irritated. Teresa's mother called the police, who took Teresa to Dr. Reginald Randall's office. Dr. Randall found grass and weeds in Teresa's pelvic area and redness in her vaginal area. Her hymen was intact, but spermatozoa were found in the vaginal area.

At trial Teresa positively identified defendant as her assailant. She also identified him at the preliminary hearing in April 1968, and she picked out his photograph on two other occasions—once in October 1967, and again a few days before the preliminary hearing. Teresa testified that the man who attacked her was taller than her mother (who was 5 feet 4 inches), neither skinny nor fat, between 50 and 60 years old, was dressed in orange boots, baggy white pants, and a green V-neck sweater, wore black squarish glasses, and appeared to have a slight limp. He also had dark, grey hair, several days growth of dark, grey beard, and smelled of alcohol. Teresa gave substantially the same description to the police immediately following the attack.

Defendant took the stand and denied the attack on Teresa. Defendant was 48 years old, 5 feet 11 inches tall, and weighed 185 to 190 pounds. His dark hair and whiskers were somewhat grey. He wore horn-rimmed glasses. He testified he had broken the frames on his only pair of glasses

two days before the attack and did not get new frames until October 6, 1967, eleven days after the attack. In the interim he could not wear his glasses. On the day of the attack he did not leave his parents' house all day. Defendant's mother, Florence Wells, corroborated defendant's story about the broken frames, his inability to wear them after they were broken, and his alibi for the day of the attack. She also produced a receipt for new frames dated October 6, 1967.

In rebuttal the prosecution called a woman witness who testified over objection of defense counsel that on the afternoon of December 1, 1966, her daughter Margaret, then 8 years old, ran into the house from a laundromat next door and complained that a man had grabbed her. The mother ran outside and saw defendant hiding between the house and the laundromat. The prosecution also called Margaret as a witness. She said that defendant, wearing glasses and with a growth of beard, grabbed her as she was walking past the laundromat, told her to remain quiet or he would stab her, and took her to a fence where he tried to kiss her. Margaret bit him on the hand and escaped.

Further testimony on this matter came from Sergeant Allen English of the Santa Maria Police Department. He had arrested defendant for the attack on Margaret, and at the time of the arrest defendant had been drinking and had a growth of beard. According to Sergeant English, defendant pleaded guilty to a misdemeanor and received a jail sentence for his attack on Margaret. The attack on Margaret occurred at a place only eight or ten blocks distant from the scene of the attack on Teresa.

### Admissibility of Evidence of Other Crimes

The principal issue presented by this appeal is whether or not the trial court erred in admitting the evidence of appellant's previous attack upon Margaret. We have concluded that this evidence was properly admitted because (1) of its relevance to the issue of appellant's identity as the perpetrator of the crime against Teresa; (2) the similarities in the ages of the two victims and in the several other common characteristics of the two crimes; and (3) the proximity of the two crimes both in time and in the short distance between the places of their commission.

A series of recent decisions of our Supreme Court and of the Court of Appeal have served to develop and clarify the law governing the admissibility of evidence of other crimes, particularly as that law relates to sex crimes. Among the precedents approving the admission of evidence of other sex crimes to prove the intent or the identity of the accused are several in which there was a lesser or no greater degree of similarity in the character-

istics of the previous and the charged offenses than there is in the common characteristics which assimilate appellant's previous criminal attack upon Margaret and his attack upon Teresa 10 months later. These recent decisions have reiterated the rule that the determination of the question whether or not the applicable conditions of admissibility have been satisfied is a matter resting in the sound discretion of the trial court.

In *People* v. *Ing,* 65 Cal.2d 603 [55 Cal.Rptr. 902, 422 P.2d 590], the Supreme Court affirmed a judgment convicting the defendant of rape. The victim testified that in October 1964 she went to the office of the defendant, a doctor, because she believed she was pregnant and desired an abortion. She further testified that on six occasions during November and December of the same year, the defendant had sexual intercourse with her after he had given her injections of some drug which made her dizzy and caused her to pass out.

The prosecution introduced the testimony of three other women to the effect that defendant had intercourse with them in his office after he had given them shots which rendered them unconscious. The first of these prior similar offenses was committed in 1949, and the second in 1962. The several similar offenses to which the third woman testified were committed during a period of several months in 1964 and 1965. Defendant took the stand and denied that he had committed the offenses charged but did not refer to the other offenses. The following indicates the holding of the Supreme Court on the issue presently under discussion: "Defendant asserts that the trial court erroneously admitted the testimony of the three women concerning the other offenses. We do not agree. It appears from the testimony of the women and of the prosecutrix that in each instance the woman saw defendant at his office as a patient, defendant gave her one or more shots and then had intercourse with her, and she would not have had intercourse with him had she not been under the influence of the drugs. In view of the striking similarities between the other offenses and the ones charged the evidence was relevant on the question of a common scheme or plan to commit rape and was properly admitted. [Citations.] The fact that one of the women was raped in 1949 affected the weight of the evidence rather than its admissibility. [Citations.]" (P. 612.)

In *People* v. *Covert,* 249 Cal.App.2d 81 [57 Cal.Rptr. 220], a judgment entered upon a jury verdict convicting the defendant of an act of incest with his daughter was affirmed. The evidence in that case is summarized as follows in the opinion: "The prosecution's case consisted of the testimony of the 16-year-old prosecutrix and her 19-year-old married sister. Each described parallel histories of years of sexual molestation by their father, culminating in acts of copulation. These activities took place in the family

home. All three were present during some of these events. Both girls described occasions of submission to their father's threats of physical harm. On the night of the charged offense, the defendant's wife (step-mother of the girls) was in the hospital. On that night, the prosecutrix testified, she submitted to her father at knife-point.

"Defendant took the stand. His defense consisted of an alibi, in which he was corroborated by his brother. The defense elicited evidence that the prosecutrix had engaged in unruly behavior and had become vindictive because defendant and his wife had subjected her to disciplinary measures. On cross-examination defendant denied misconduct with the prosecuting witness. The defense did not attack the testimony of the elder daughter." (P. 83.)

The *Covert* opinion provides an excellent and most helpful analysis of *People* v. *Ing, supra,* of numerous earlier California precedents and of other authorities dealing with the admissibility of evidence offered to prove that the accused has committed other crimes similar to that for which he is being tried. Since it would unduly extend this opinion to quote at length from the *Covert* opinion, we adopt its content by reference with the observation that it strongly supports our conclusion that the trial court in the case at bench did not err in its ruling that the evidence of appellant's prior offense was admissible.

In *People* v. *Kelley,* 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947], the Supreme Court discusses at considerable length the situations in which evidence of other sex crimes is admissible to prove the *intent* of the accused. After stating the general rule "that evidence of other crimes is inadmissible when it is offered *solely to prove criminal disposition or propensity* on the the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect," (italics added; p. 238) the opinion proceeds to analyze the precedents in which evidence of other sex crimes was held admissible to prove intent. The following from page 243 of the opinion is apposite: "But where the acts, if committed, indisputably show an evil intent and the defendant does not specifically raise the issue of intent, the better reasoned cases hold that evidence of other crimes is admissible only when they were performed with the prosecuting witness (*People* v. *Sylvia, supra,* 54 Cal.2d 115 [4 Cal.Rptr. 509, 351 P.2d 781]), *or where the offenses are not too remote and are similar to the offense charged and are committed with persons similar to the prosecuting witness. Then they are admissible as showing a common scheme or plan. (People* v. *Malloy, supra,* 199 Cal.App.2d 219 [18 Cal.Rptr. 545]; *People* v. *Honaker, supra,* 205 Cal.App.2d 243 [22 Cal.Rptr. 829].)" (Italics added.)

At page 241 of the *Kelley* opinion, Justice Peters observed that "There

seems to be a trend in recent 288 cases to admit evidence of not too remote offenses which are of a character similar to the offense charged and are performed with persons similar to the prosecuting witness on the theory, inter alia, that it is relevant to proving intent even though the defendant has not admitted touching the prosecuting witness and has not otherwise specifically placed the element of intent in issue." The same trend is observable in recent 288 cases approving the admission of evidence of "not too remote" similar offenses with persons similar to the prosecuting witness to prove the *identity* of the perpetrator.

In *People* v. *Cramer,* 67 Cal.2d 126 [60 Cal.Rptr. 230, 429 P.2d 582], the Supreme Court affirmed a judgment convicting the defendant of violating Penal Code section 288. The prosecution offered evidence that the defendant had committed lewd and lascivious acts, including oral copulation, upon the body of Philip, age 13. The trial court, after overruling defendant's objections, admitted additional evidence *that only a short time previously* appellant had committed a similar offense with James, age 15.

As a reading of the *Cramer* decision will show, there was present in that case substantially the same degree of similarity in the charged and uncharged offenses that we find in the charged offense and the *admitted* previous offense in the case at bench. It is a matter of significance that in *Cramer* the defendant *denied* the commission of *both* offenses, whereas in the case at bench appellant had *admitted* the prior offense by pleading guilty to it. **(2)** In holding that the evidence of Cramer's uncharged offense with James was admissible, the Supreme Court stated the law as follows, at page 129: "It is settled that evidence of other crimes is ordinarily admissible where it tends to show presence of a common design, plan, or *modus operandi,* and we recently recognized in *Kelley, supra,* that this rule applies to sex offenses committed with persons other than the prosecuting witness. We there pointed out that, although charges of sex offenses are often unreliable and particularly difficult to disprove, such evidence is admissible as showing a common scheme or plan where the offenses are not too remote, are similar to the offense charged, and are committed with persons similar to the prosecuting witness. (*People* v. *Kelley, supra,* 66 Cal.2d 232, 240-243.)"

 As we shall develop more fully in discussing the discretionary nature of trial court rulings upon the admissibility of evidence of other offenses, the law stated in *Cramer* should apply a fortiori in the case at bench because the previous offense proved against Wells was an *admitted* offense. This fact eliminates one of the principal reasons underlying the general rule of exclusion where the evidence of the uncharged offense is offered solely to prove criminal disposition or propensity.

In *People* v. *Lindsay,* 227 Cal.App.2d 482 [38 Cal.Rptr. 755], the de-

fendant was convicted on numerous counts charging sex perversion, rape and robbery. There were similarities in the manner in which the defendant entered the homes of his victims, forced them to submit to sexual assaults, and in some instances he robbed them. The trial court admitted evidence of defendant's attack upon another woman for which he had not been charged. The similarities in defendant's *modus operandi* in the charged and uncharged offenses did not involve any unique characteristics that are not common to most cases of forcible rape followed by robbery.

In holding that the trial court did not err in admitting evidence of the uncharged offense, the Court of Appeal stated the law as follows at page 504: "Since defendant in the instant case denied committing the offenses charged and offered the defense of alibi, he made the issue of identity determinative of the question of his guilt or innocence. In other words, the essential question was whether the prosecution witnesses were mistaken in their identification of defendant as the perpetrator of the crimes with which he was charged. (*People* v. *McCarty,* 164 Cal.App.2d 322, 325 [330 P.2d 484].) In such a situation it is well settled that evidence of other crimes showing a similar *modus operandi* is admissible as tending to identify the defendant as the perpetrator of the charged crimes. (*People* v. *Peete, supra,* 28 Cal.2d 306, 319 [169 P.2d 924]; *People* v. *Renchie,* 217 Cal.App.2d 560, 563 [31 Cal.Rptr. 694]; *People* v. *Scott,* 218 Cal.App.2d 249, 253-254 [32 Cal.Rptr. 225]; *People* v. *Cavanaugh,* 44 Cal.2d 252, 265-266 [282 P.2d 53].) In *Scott* it was remarked: 'Where the identity of the defendant is in issue, evidence that he committed other crimes or attempts under circumstances which were remarkably similar to the one charged may be admitted for the purpose of showing that the defendant did in fact commit the crime charged.' (Pp. 253-254.) The above quoted rules are applicable to cases involving sexual crimes and it is proper to permit evidence of similar sexual offenses to show a common plan, scheme or design. (*People* v. *Minkowski,* 204 Cal.App.2d 832, 849-851 [23 Cal.Rptr. 92]; *People* v. *Crisafi,* 187 Cal.App.2d 700, 706-707 [10 Cal.Rptr. 155]; *People* v. *Malloy,* 199 Cal.App.2d 219, 230-233 [18 Cal.Rptr. 545].)

"The essential question for determination, in each instance, is whether there is either a direct or circumstantial connection between the similar offense and the charged offense to support the inference that if the defendant committed the similar offense, he probably committed the act charged. That determination requires that the facts pertaining to the other offense show a general pattern, scheme, or plan, and that they are sufficiently similar and possess a sufficiently high degree of common features with the act charged to warrant the inference that if the defendant committed the other act or acts, he committed the act charged. *Whether the applicable test is satisfied is primarily a question for the trial court.* (*People* v. *Grimes,* 113 Cal.App.2d

365, 371 [248 P.2d 130]; *People* v. *Roach,* 148 Cal.App.2d 364, 368 [306 P.2d 523]; *People* v. *McCarty, supra,* 164 Cal.App.2d 322, 326.)" (Italics added.)

*People* v. *Armstrong,* 275 Cal.App.2d 30 [79 Cal.Rptr. 668], the most recent case brought to our attention, presented a factual situation similar to that of the case at bench. Armstrong was convicted on three counts of child molestation in violation of Penal Code section 288.

In addition to the evidence tending to prove defendant's guilt of the three offenses charged, involving his criminal acts against Doreen, Debra and Kathy, the trial court admitted evidence of seven other similar attacks which he had committed at other times against Barbara, Kathy, Doreen, Charlotte and Judith. The ages of these children ranged from 8 to 12 years.

It is deemed unnecessary to repeat herein the recitals of the cited decision which describe the sordid acts of the defendant against each of his victims. It suffices to observe that the only similarities which characterized all of the 10 offenses related to the ages of the victims, the time of day, the locale of the crimes and the commission of acts which are common to nearly every crime of this nature, such as removing the clothing and violating the private parts of the victims. In affirming the judgment of conviction the appellate court used the following language: "Armstrong contends the court should not have allowed evidence of other offenses because the other offenses were not similar. The People show a number of similarities, including nature of acts, place of operation and time of occurrence.

"Armstrong contends the similarities relate to matters common to most all crimes of this nature. However, similarity of action and detail showing a discernible pattern, rather than uniqueness, is the appropriate test in this case.

"Armstrong also contends no issue was raised at the trial of identity or intent. He simply asserted the girls' testimony was fabricated and he did not do the acts. It is not necessary a defendant raise issues before the People may meet them as the People have the burden of establishing intent and identity.

"The other offenses here are not too remote (all were within a five-month period) and were sufficiently similar to show a common scheme or plan (*People* v. *Kelley,* 66 Cal.2d 232, 243 [57 Cal.Rptr. 363, 424 P.2d 947]). *It was within the court's discretion to admit them* (*People* v. *Haston,* 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 91])." (Italics added; p. 34.)

In *People* v. *Henderson,* 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677], the defendant was charged with the murder of Mrs. Joyce Lovett. It was established by the evidence that defendant had taken his victim to a motel

where he registered them as Mr. and Mrs. Henderson. About a half hour later defendant killed and mutilated the body of the deceased. The physician who performed the autopsy testified that death was caused by asphyxiation associated with multiple blunt injuries. The physician described in detail the injuries which in his opinion had been inflicted before death resulted. These injuries included multiple contusions on various parts of the body and extensive lacerations in the rectal and vaginal areas.

For the purpose of rebutting defendant's defense of lack of malicious intent and premeditation, the People offered the testimony of Mrs. Pauline Perez that a month before the killing, the defendant had committed a sexual attack on her under circumstances similar to those surrounding the homicide. The testimony of Mrs. Perez is summarized in the opinion of the Supreme Court as follows: "Mrs. Perez testified that she met defendant in the same bar in San Jose in which he later met the deceased and agreed to have defendant take her home. She testified that defendant did not take her home and that when she attempted to get out of his car, he struck her and threatened to kill her if she tried it again. When they stopped, defendant drew a knife and attempted to rape her and forced her to commit an unnatural act and to submit to the commission of a similar act by him. She testified that defendant then inserted a sap into her vagina and bit her arms, legs, breasts, and stomach. He threatened to kill her so that she could not report the incident to the police, but relented when she begged for her life. When defendant allowed her to leave the car, he kept her underclothes and purse. Mrs. Perez was taken to a hospital and the police were notified. Photographs of Mrs. Perez's injuries were introduced by the People to explain and corroborate her testimony. Defendant admitted on the stand that he performed the acts testified to by Mrs. Perez, but denied that he had a knife or that he threatened to kill her. He also denied that he threatened to kill her because she had informed on him." (Pp. 486-487.)

The portions of the *Henderson* decision most pertinent to the issues of law now under discussion are the following from pages 494-495: "Defendant's contention that the trial court erred in admitting into evidence over objection the testimony of Mrs. Pauline Perez that defendant had attacked her sexually a month before the killing is devoid of merit. It was clearly admissible to prove, as the jury was instructed, defendant's motive for killing the deceased and the intent with which the act was done. 'It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge.' (*People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981]; *People* v. *Weitz,* 42 Cal.2d 338, 347 [267 P.2d 295].)

The evidence was relevant on the issues for which it was received. *Although evidence of prior offenses carries with it the risk that its probative value may be outweighed by its possible prejudicial effect, evaluation of this risk rests in the sound discretion of the trial court. (People* v. *McCaughan,* 49 Cal.2d 409, 421-422 [317 P.2d 974].) We find no abuse of discretion in the admission of Mrs. Perez's testimony."

As we have noted previously, one of the factors favorable to the trial court's exercise of its discretion in the present case is the fact that appellant had *admitted* his guilt of his former offense by pleading guilty to it. As Justice Peters pointed out both in *Kelley* and *Cramer,* one of the principal reasons underlying the general rule of exclusion is "to avoid placing the accused in a position where he must defend against crimes for which he has not been charged."

Every dictate of logic and common sense concurs with the precedents supporting the conclusion that the trial judge in this case did not abuse his discretion when he ruled that appellant's attacks upon Margaret and Teresa were sufficiently proximate in time and place and sufficiently similar in their common characteristics that evidence of his attack upon Margaret 10 months previously at a place only 8 or 10 blocks distant from the place of his attack upon Teresa tended logically and reasonably to corroborate the testimony of Teresa that it was appellant who committed the similar attack upon her.

### Other Assignments of Error

■ Other untenable contentions advanced by appellant require no extended discussion. He argues that his prior conviction of burglary in 1949 was invalid because of the asserted fact that he was not represented by counsel at the preliminary examination. He admits that he was represented by counsel when he entered the plea of guilty upon which the 1949 judgment was based. There is no suggestion that appellant moved to set aside the information charging the crime to which he entered his plea of guilty. In these circumstances it is obvious that the contention is without substance. *(People* v. *Harris,* 67 Cal.2d 866, 870-871 [64 Cal.Rptr. 313, 434 P.2d 609]; *In re Wells,* 67 Cal.2d 873, 874-875 [64 Cal.Rptr. 317, 434 P.2d 613]; *In re Vizzard,* 255 Cal.App.2d 571 [63 Cal.Rptr. 305].)

■ Appellant also complains that he was not represented by counsel on April 15, 1968, when the victim of his assault identified him by reference to photographs shown to her by a police officer. There is no contention, nor is there any basis for a contention, that there was anything unfairly suggestive or improper in this pretrial identification procedure. There was no violation of the rules enunciated in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d

1149, 87 S.Ct. 1926]. (*People* v. *Adair,* 2 Cal.App.3d 92, 94-97 [82 Cal. Rptr. 460]; *People* v. *Green,* 3 Cal.App.3d 240, 245, 246 [83 Cal.Rptr. 491].)

We reject the contention that the trial court erred in refusing to instruct the jury that contributing to the delinquency of a minor was a lesser offense included in the charge of child molestation and that simple assault was a lesser offense included in the charge of assault with intent to commit rape. The courts have taken a realistic and practical approach in determining the necessity for instructions on lesser included offenses. **(6)** "The law is well settled in this state that the trial court may properly refuse to instruct upon simple assault where the evidence is such as to make it clear that if the defendant is guilty at all, he is guilty of the higher offense. [Citations.]" (*People* v. *McCoy,* 25 Cal.2d 177, 187 [153 P.2d 315].) To the same effect are the decisions in *People* v. *Moody,* 216 Cal.App.2d 250, 252, 255 [30 Cal.Rptr. 785]; *People* v. *Romersa,* 111 Cal.App.2d 173, 177, 178 [244 P.2d 98]; *People* v. *Stewart,* 109 Cal.App.2d 334, 341-342 [240 P.2d 704]. In the case at bench the evidence is overwhelming to the point of conclusiveness that defendant intended to rape Teresa and gratify his lust, and there is no evidence that defendant merely intended to commit a simple assault or to contribute to the delinquency of a minor.

Appellant has argued that Judge Arden T. Jensen, who presided at the trial of this case, was not properly authorized to preside because there was no sufficient stipulation by counsel, and furthermore "that even if his counsel stipulated to Arden Jensen presiding at the trial of this case, the stipulation was ineffective because appellant did not personally concur." The complete answer to this contention is that Judge Arden T. Jensen, prior to the time of the trial, had been assigned by the Chairman of the Judicial Council, pursuant to article VI, section 6 of the California Constitution, to sit as a Judge pro tempore of the Santa Barbara Superior Court and a stipulation of the parties was therefore unnecessary.

We agree that the double punishment involved in the dual conviction and the imposition of sentence on both counts is violative of Penal Code section 654. (*People* v. *Flores,* 267 Cal.App.2d 452, 459-460 [73 Cal.Rptr. 118].) Since the greater offense is the violation of Penal Code section 288, the judgment is modified by striking therefrom the language which imposes sentence for the lesser offense of assault with intent to commit rape.

As modified the judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1971.