[Civ. No. 41964. First Dist., Div. One. Aug. 15, 1978.]

MARTIN T. COBURN, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

COUNSEL

Steinhart, Goldberg, Feigenbaum & Ladar and John W. Hanley, Jr., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Defendant and Respondent.

OPINION

SATER, J.*—Petitioner and appellant, Martin T. Coburn, appeals from a judgment denying his petition for writ of mandate to compel respondent State Personnel Board (hereafter referred to as Board) to set aside its decision dismissing him from his employment with the Department of Health (hereafter referred to as Department) as a psychiatric technician. Appellant contends: (1) That the Department's punitive action was taken without adequate notice and an opportunity to respond, contrary to administrative regulations and requirements of due process; (2) That evidence of a prior misdemeanor conviction was improperly admitted at the administrative hearing; and (3) That the Board denied him his right to counsel and abused its discretion in connection with his petition for rehearing.

Prior to his dismissal, appellant had been employed by the Department as a psychiatric technician at Agnews State Hospital for approximately 10 years. He had performed satisfactorily during those years and had been subject to no punitive action. The basis of the herein disciplinary action was the allegation that on December 10, 1975, a hospital worker had observed appellant in the act of masturbating a 28-year-old male mentally retarded patient. On December 16, 1975, the hospital worker reported the alleged incident to her supervisor at the hospital. Appellant was immediately put on administrative leave with pay. The following day he was interviewed by an administrator at the hospital, and he denied the charges. On December 22 a representative of a labor organization, Patrick Knopp, notified the hospital that he, Knopp, would be representing appellant relative to any disciplinary proceedings that might be instituted. Between December 24 and January 5, 1976, a personnel officer from the hospital made two attempts to telephone Mr. Knopp, but his

---

*Assigned by the Chairperson of the Judicial Council.

calls were not returned. On December 30, 1975, the Department of Health mailed a "Notice of Punitive Action"[1] to appellant, informing him of his dismissal "effective at 5 p.m., January 5, 1976." Due to the intervening holidays, this notice was received by appellant on January 5, 1976, at 2:30 p.m., just two and one-half hours before the effective date of this dismissal. Mr. Knopp requested that the hospital give appellant an extension of one day in order to allow him time to respond to the charges, but this request was denied. The dismissal thus became effective on January 5, 1976.

Subsequently, appellant requested a hearing before the State Personnel Board, and on March 25, 1976, a hearing was held before a Board hearing officer. Appellant was represented at the hearing by Mr. Knopp. During the course of the hearing counsel for the Department first questioned appellant regarding arrests for "various sexual incidents," to which an objection was sustained, and then was allowed to question appellant, over his objection, regarding a misdemeanor conviction which occurred in 1966. On April 19, 1976, the hearing officer issued his proposed decision finding the allegations against appellant to be true and upholding the dismissal. On April 21 the Board adopted the hearing officer's decision.

Following the adoption by the Board of the decision of the hearing officer, appellant, on May 13, 1976, through Mr. Knopp, timely requested a rehearing by the Personnel Board. The Department filed a memorandum of points and authorities in opposition to this request. On June 3, 1976, an attorney, John Schaller, entered the case on behalf of appellant and informed the Board that he would be representing appellant in the "appeal." Mr. Schaller soon discovered that no transcript of the disciplinary hearing had been prepared, and he immediately ordered one. On June 16 he advised the Board that he had ordered the transcript, and requested additional time to reply to opposition points and authorities until the transcript was received and he had had an opportunity to review it. This request was refused. On July 6, 1976, Mr. Schaller, without having received the transcript, submitted his points and authorities to the Board. On July 14, the Board denied the petition for rehearing. Appellant then brought his petition for writ of mandate in the Superior Court of Santa Clara County which, after briefing and argument by both parties, was denied.

---

[1]The notice recited that the action was based on "the following subsections of Government Code section 19572: (1) Immorality (2) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

*Adequacy of Notice of Department's Punitive
Action and Effective Opportunity to Respond*

 Appellant contends that as the notice of punitive action was received by him on January 5, 1976, only two and one-half hours prior to the imposition of the punitive action, he was denied adequate notice and an effective opportunity to respond, in violation of requirements of due process and also of the specific provisions of title 2, California Administrative Code section 61.[2]

In *Skelly* v. *State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], the Supreme Court held that due process entitles a permanent civil service employee to certain minimal safeguards prior to action terminating his employment, including notice of the charges and the right to respond prior to the effective date of the dismissal action. Following the decision in *Skelly,* the Board promulgated Rule 61, incorporating the due process requirements stated in *Skelly.* (See *Barber* v. *State Personnel Board,* 18 Cal.3d 395, 403 [134 Cal.Rptr. 206, 556 P.2d 306].) Appellant contends that as Rule 61 is an attempt to effectuate the mandate of *Skelly,* it must be interpreted as meaning that the employee must *receive* notice five calendar days prior to the hearing, that merely placing the notice in the mail five days prior to the hearing is not sufficient. We agree. Rule 61 provides not only for notice but also for the opportunity to respond, and its plain wording indicates that there is a five-day period in which to make such a response: "At least five calendar days prior to the effective date of any punitive action against an employee with permanent civil service status, the appointing power . . . shall give the employee written notice of the proposed action, . . . and the right to respond either verbally or in writing, to the authority proposing the action prior to its effective date."

Common sense would indicate that there could be no right to respond to a notice five days before punitive action if one had not received the notice. Further, the Department itself appeared to have the same interpretation, in

[2]Title 2, California Administrative Code section 61 (hereafter referred to as Rule 61) provides: "At least five calendar days prior to the effective date of any punitive action against an employee with permanent civil service status, the appointing power or any person authorized by it shall give the employee written notice of the proposed action, the reasons for such action, and the right to respond either verbally or in writing, to the authority proposing the action prior to its effective date."

that its notice of punitive action expressly recognized a five-day opportunity to respond, containing the statement "as an employee with permanent civil service status, you are entitled to five calendar days within which to respond to this notice." More importantly, we agree with appellant that the due process requirements of *Skelly* were not met in this instance. *Skelly,* of course, dealing solely with the failure of Government Code section 19574 to provide for *any* notice or opportunity to respond prior to the effective date of punitive action, did not consider the question of the extent of the minimum response time that might be required to satisfy due process requirements. We note, however, that *Skelly* was based in large part upon the decision of the United States Supreme Court in *Arnett* v. *Kennedy,* 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633]. In *Arnett,* the dismissal statute and regulations in question provided for 30 days' notice prior to termination, which was held to satisfy due process requirements. That is substantially greater than two and one-half hours. We note, also, that one federal court, construing *Arnett* stated that the due process procedures expressed in *Arnett* include "prior to termination, written notice of the reasons for termination and an *effective* opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision." (*Thurston* v. *Dekle* (5th Cir. 1976) 531 F.2d 1264, 1273, italics added.) We conclude that the actual notice given appellant, two and one-half hours prior to the imposition of the punitive action, failed to comport with the requirements of due process.

Respondent argues that the due process requirements of *Skelly* and the requirements of Rule 61 were satisfied by the informal procedures employed prior to the formal notice of December 30. Appellant had been interviewed by a representative of the hospital and had an opportunity at that time to rebut the charges, which he did. Also, the hospital personnel officer had twice telephoned Mr. Knopp to advise him regarding the pending action but the calls were not returned. In sum, respondent contends that informal notice and opportunity to respond satisfy the requirements of due process as expressed in *Skelly.* We do not agree. *Skelly* rejected the notion that due process requirements are satisfied by oral notice of the charges and a post hoc opportunity to answer the charges. (15 Cal.3d at p. 215.) Further, in *Barber* v. *State Personnel Board, supra,* 18 Cal.3d 395, the court held a dismissal invalid for lack of advance notice even though the employee had two prior discussions with his supervisors concerning the incident leading to the dismissal.

*Admission of Evidence of Prior*
*Misdemeanor Conviction*

At the disciplinary hearing held March 25, 1976, counsel for the Department called appellant as a witness pursuant to Evidence Code section 776, and questioned him as follows:

"Q. Now, for purposes of establishing this, you have had complaints against you, in fact you have been arrested for various sexual incidents, haven't you?

"MR. KNOPP: I object to the question.

"A. No.

"MR. KNOPP: I object to the question.

"HEARING OFFICER: Well, the objection is sustained insofar as arrests are concerned.

"[Respondent's attorney]: O.K. The purpose of this is two fold. It is to build up two things. First of all, character witnesses are going to come in here and they are going to say: 'I know the guy. He is a wonderful guy.'

"MR. KNOPP: That is conjecture.

"HEARING OFFICER: Let him finish.

"[Respondent's attorney]: What is his character or reputation? The easiest way around that is to say did you know arrests are perfectly proper impeachment information. I am simply trying to establish through him the validity of the arrests for this type of thing.

"HEARING OFFICER: If there are in fact going to be character witnesses called solely on the purpose of character, then this type of questioning is proper. The objection is overruled. You may proceed.

[Respondent's attorney]: Now, Mr. Coburn, have you been arrested for 288 in Stockton?

"A. I don't remember the number. I have been arrested, yes.

"MR. KNOPP: Mr. Hearing Officer, I will object again as to the relevancy of the State to go into this matter on two points. It is conjecture as to what the appellant is going to introduce as his side of the case.

"HEARING OFFICER: Mr. Knopp, we are not playing games. Are you or are you not going to call character witnesses?

"MR. KNOPP: No.

"HEARING OFFICER: All right. Then the objection will be sustained if there are no character witnesses called in this matter. If they are in fact called you will be permitted to cross this witness on that at that time.

"[Respondent's attorney]: All right. Arrests are out of it and no character witnesses. Let's talk about conviction.

"MR. KNOPP: I will object on the same ground. This is an additional matter here of a possible violation of Department procedure and possible illegality over the use of rap sheets by the Department.

"HEARING OFFICER: Objection is overruled. Convictions are always relevant in a matter of this type.

"[Respondent's attorney]: Q. Mr. Coburn, have you ever been convicted of anything?

"A. No.

"Q. Do you know what 674(a) is, Mr. Coburn?

"A. No.

"Q. You have never been convicted of anything at all?

"A. I pleaded no contest to one charge but I don't know the number of it.

"Q. You pleaded no contest, and as [a] result of that did you have to pay a fine?

"A. Yes.

"Q. What were the facts out of which that arose?

"A. I don't think that is relevant here.

"HEARING OFFICER: Convictions are relevant. If you pleaded nolo contendere and it resulted in a conviction the facts are relevant. You will answer the Attorney General.

"A. Well, I was sick and in the restroom of Valley Fair and the officers arrested me there and booked me, and so my attorney pleaded no contest, and why I don't know, because I didn't want him to, told him not to, but he did any way, . . ." On redirect examination, appellant stated that the approximate date of the conviction[3] was 1966.

■ Appellant contends that it was prejudicial error to admit the evidence of the prior misdemeanor conviction, especially in the context of the previous questions regarding arrests for sexually related offenses. Appellant contends that the evidence was not admissible for purposes of impeachment as to credibility, and was not relevant to prove or disprove any disputed fact.

Government Code section 19578 provides that at the disciplinary hearing the parties may submit all "proper and competent" evidence against or in support of the causes. Competent evidence is evidence that, if relevant, is otherwise admissible under the laws of evidence. (See *People* v. *Manning* (1874) 48 Cal. 335, 338.) Further, section 19578 incorporates the hearing procedures of the Administrative Procedure Act, Government Code section 11513. That section, although stating that hearing shall not be restricted to technical rules of evidence, expressly states that only relevant evidence is admissible and that "irrelevant evidence is inadmissible." (Gov. Code, § 11513, subd. (c).) Thus, in order for the evidence of the misdemeanor conviction to have been admissible, it must have been relevant, either on the issue of credibility or as tending to prove or disprove a material fact in issue. (Evid. Code, § 210.)

---

[3]The precise offense for which appellant had been convicted was never made clear at the disciplinary hearing. There is, of course, no Penal Code section 674(a). However, whether the code reference was made out of ignorance or was simply a verbal slip, there can be no doubt that, following upon the references to sexual offenses, what was intended and conveyed was reference to Penal Code section 647, subdivision (a). This section provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: [¶] (a) Who solicites anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view."

Respondent does not dispute the obvious contention that evidence of conviction of a misdemeanor is not admissible to impeach the credibility of a witness. (Evid. Code, § 787; see *People* v. *Lent* (1975) 15 Cal.3d 481, 484 [124 Cal.Rptr. 905, 541 P.2d 545].) Respondent contends that the evidence, which it characterizes as evidence of a "similar act of homosexual misconduct,"[4] was admissible as offered to prove a common plan or scheme, or as corroboration of the testimony of the "complaining witness," analogizing to criminal cases involving sex offenses.

Evidence that a defendant committed other crimes is inadmissible if offered solely to prove a criminal disposition on the defendant's part. (*People* v. *Cramer* (1967) 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582]; Evid. Code, § 1101.) Respondent is correct that an exception to this rule is that evidence of prior sexual offenses may be admissible if offered to prove either a common design, plan or scheme (see *People* v. *Cramer, supra,* 67 Cal.2d at p. 129), or to corroborate testimony of a prosecuting witness (see *People* v. *Covert,* 249 Cal.App.2d 81 [57 Cal.Rptr. 220]; *People* v. *Kazee* (1975) 47 Cal.App.3d 593 [121 Cal.Rptr. 221]). However, in its recent decision in *People* v. *Thomas,* 20 Cal.3d 457 [143 Cal.Rptr. 215, 573 P.2d 433], the Supreme Court clarified the standards for admissibility under either of those exceptions. *Thomas* involved a prosecution for violation of Penal Code section 288, in which the defendant was charged with committing lewd acts on his stepdaughter, then 12 years old, and upon his natural daughter, then 9 years old. Testimony by defendant's adult daughter of similar offenses which had occurred between 10 and 18 years prior to the offenses in question, was admitted over objection at trial. Discussing the "common design or plan" exception, the court stated that the prior offenses must be sufficiently similar and have a sufficiently high degree of common features so as to warrant the inference that if the defendant committed the earlier offense he committed the act charged. (*Thomas,* 20 Cal.3d at p. 465.) Further, the court reiterated its position as stated in *People* v. *Cramer, supra,* 67 Cal.2d 126 and *People* v. *Kelley* (1967) 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947], that the prior offense must not have been too remote in time. The court held that in the case before it the evidence of conduct during a period between 10 and 18 years prior to the offense was too remote in time to be relevant. (*Thomas,* 20 Cal.3d at p. 466.) Further, discussing the "corroboration" exception, the court expressly disapproved *People* v. *Covert, supra,* and *People* v. *Kazee, supra* (relied upon by respondent herein), to the extent that they suggested that evidence of prior sexual

---

[4]We note that Penal Code section 647, subdivision (a), by its terms is not restricted to conduct of a homosexual nature.

offenses would be admissible *without* regard to the remoteness of the prior offense or the lack of close similarity to the charged offense. It stated that under the corroboration exception, the restrictions with respect to remoteness and similarity have particular application (*Thomas,* 20 Cal.3d at p. 469).

Applying the principles stated in *People v. Thomas* to the instant case, the evidence of the misdemeanor conviction was not relevant and therefore not admissible under either of the exceptions relied upon by respondent. With respect to the requirement of similarity, the nature of the prior offense suggested to be a conviction for violation of Penal Code section 647, subdivision (a), covers such a wide range of possible sexual misconduct, as to make even an attempt at an analysis for similarity virtually impossible. Certainly, in terms of setting and persons involved, it in no way involved a situation comparable to the charge in question, being only a vague suggestion of homosexual misconduct totally unrelated in setting and persons involved. With respect to the other test for admissibility, that of remoteness, the incident occurred in 1966, almost 10 years prior to the offense with which appellant was charged. This was clearly far too remote in time to be relevant. The inescapable conclusion is that ultimately the evidence can have had but one purpose: to improperly suggest to the trier of fact that having once been involved in a sexual offense of a homosexual nature, the appellant was predisposed to commit the offense in question. That is forbidden. (Evid. Code, § 1101, subd. (a).)

Respondent contends that the evidence was, nevertheless, admissible to rebut any "isolated act" defense relative to the issue of the penalty to be imposed.[5] With respect to the purpose of rebuttal, at the time appellant was questioned regarding the arrests and the conviction, he had not presented any defense, so there was nothing to rebut. With respect to the issue of penalty, the evidence was neither offered nor received as limited to that purpose. Respondent's contention thus contains a fallacy. It assumes that there was a proper determination that the appellant had in fact committed the act charged. We have demonstrated that this was not so.

---

[5]We are aware that under Government Code section 19572, subdivision (k), a conviction for a misdemeanor involving moral turpitude is, in itself, grounds for disciplinary action. However, the 1966 conviction was not the basis for this disciplinary action involved here. Further, unless it were shown that the conviction had occurred while appellant was employed by the state, it is doubtful whether it could have been a basis for discharge. (See *Wilson* v. *State Personnel Board,* 39 Cal.App.3d 218, 222 [114 Cal.Rptr. 134] (conc.opn.).)

Respondent further contends that as the hearing proceedings were administrative, and not criminal, that the rules of admissibility of such evidence which developed in criminal cases do not apply. We have pointed out earlier in this opinion that although technical rules of evidence do not apply in administrative proceedings, fundamental questions of competency and relevancy remain. Further, the rule embodied in Evidence Code section 1101, subdivision (a), is not limited to criminal cases. (See *Marocco* v. *Ford Motor Co.,* 7 Cal.App.3d 84, 91-92 [86 Cal.Rptr. 526].) Lastly, and most importantly, the application of the rules of evidence in this case must be considered in the context of a hearing that dealt with a property interest which is entitled to the protection of due process. (See *Skelly* v. *State Personnel Board, supra,* 15 Cal.3d 194.)

We conclude further that the hearing officer's error in admitting the evidence was prejudicial to appellant. The evidence of the conviction must be viewed in the light of the clearly improper questioning which had preceded it regarding arrests for "various sexual incidents,"[6] including a reference to an arrest for Penal Code section 288. Thus, there was placed before the trier of fact an array of irrelevant and incompetent suggestions of previous sexual misconduct. This cannot help but be prejudicial in a case such as this, which turned on the sole issue of credibility of witnesses, that of the appellant and that of the hospital worker witness. (See *People* v. *Thomas, supra,* 20 Cal.3d at p. 470; *People* v. *Kelley, supra,* 66 Cal.2d 232, 245.)

*Request for Rehearing*

Appellant contends that the Board abused its discretion in failing to postpone its decision on the petition for rehearing until such time as appellant's counsel had an opportunity to review the transcript of the disciplinary proceeding.

█ Section 19586 of the Government Code authorizes the Personnel Board to grant a rehearing; but the rehearing process is not an appellate review procedure. The Board is not required to review the transcript or consider the arguments of the parties. (See *Sinclair* v. *Baker* (1963) 219

---

[6]We note again the offering of evidence as "rebuttal," without first determining whether there was anything to rebut. Counsel for the Department could have inquired as to whether there were character witnesses to be presented, before commencing his line of questioning regarding arrests. By the time it was determined that there were no such witnesses to be presented, the damage was done.

Cal.App.2d 817 [33 Cal.Rptr. 522] [app.dism., 377 U.S. 215 [12 L.Ed.2d 292, 84 S.Ct. 1225), rehg. den., 379 U.S. 872 (13 L.Ed.2d 78, 85 S.Ct. 18)]; *Fichera* v. *State Personnel Bd.* (1963) 217 Cal.App.2d 613, 618-620 [32 Cal.Rptr. 159]; *Moyer* v. *State Bd. of Equalization* (1956) 140 Cal.App.2d 651, 654-655 [295 P.2d 583].) In fact, the Board need not take any action at all on a petition for rehearing. By its mere inaction the petition will be deemed denied on the 60th day. (Gov. Code, § 19586.) We find no error.

The judgment is reversed and the cause is remanded to the trial court with directions to issue a writ of mandate setting aside the Board's action.

Elkington, Acting P. J., and Low, J.,* concurred.

A petition for a rehearing was denied September 14, 1978, and respondent's petition for a hearing by the Supreme Court was denied October 12, 1978. Bird, C. J., did not participate therein.

---

*Assigned by the Chairperson of the Judicial Council.