[Crim. No. 11160. Fourth Dist., Div. One. Nov. 27, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ROMAN ESPINOZA, JR., Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Harold F. Tyvoll for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney Gen-

eral, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Roman Espinoza, Jr. (Espinoza) was convicted by a jury of robbery (Pen. Code, § 211; all references are to the Penal Code unless otherwise specified) with the finding he personally used a firearm in the commission of the offense (§ 12022.5). He was sentenced to prison for five years. In his appeal from the judgment he claims his lawyer was incompetent and the court should have instructed *sua sponte* that accomplice testimony on firearm use required corroboration. We conclude that defense counsel's decision to waive closing argument did not deny Espinoza the effective aid of counsel and the jury was properly instructed. We affirm the judgment.

## Facts

On September 9, 1978, Dennis Evans, a clerk at U-Tote-M Market, was robbed. At about 1:30 a.m., Evans had gone outside to clean the gas pumps when he noticed a man, Danny Baldwin, standing by the phone, and a second man, later identified by Evans as the defendant, who gave him "odd looks." Evans was scared and returned to the store. Defendant followed him, pulled a gun, which Evans thought was a .32 automatic, and cocked it. Evans told defendant he didn't need the gun; he could have all the money. Defendant put the gun to Evans' forehead and told him to hurry up. After getting the money, defendant left.

At trial, Danny Baldwin was called by the People and testified. He said he was with defendant and a Marcos Rodriguez on the night in question. They eventually went over to the market and discussed committing a robbery. Rodriguez, who said he was not going to pull the robbery, gave defendant a loaded .38 revolver. Baldwin, as the lookout, stayed outside the store while defendant went inside, pulled the gun on the proprietor, obtained the money and fled. Defendant did not testify. Defense counsel did not argue the case to the jury.

## Defendant Was Not Denied the Effective Aid of Counsel

Defendant first asserts his appointed lawyer denied him the effective aid of counsel by failing to make a closing argument to the jury.

(See § 1093, subd. 5.) He quite correctly stresses the important function of argument in criminal cases. "[C]ounsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. [fn. omitted.]" (*Herring* v. *New York* (1975) 422 U.S. 852, 858 [45 L.Ed.2d 593, 598, 95 S.Ct. 2550, 2553].) The issue before us, however, is not defendant's entitlement to closing argument, but whether he has been denied effective counsel because his lawyer chose not to make such an argument.

■ The burden of proving a claim of inadequate trial assistance is on the appellant who must show that trial counsel acted or failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) ■ Espinoza points to several important issues of fact which defense counsel might have addressed in argument—issues which counsel himself developed during the examination of prosecution witnesses. For example, on the question of identity, counsel could have argued that bringing the victim to the scene of Espinoza's detention about a mile distant and within 45 to 60 minutes after the robbery, was unduly suggestive. Counsel could have pointed out that if Evans had been mistaken about the caliber of the gun, he could also have been mistaken about the appearance of facial features of the man who wielded the gun, particularly in light of his fright at the time the robbery occurred. Counsel might also have referred to Baldwin as an accomplice, stressing the fact his testimony must be viewed with distrust and that he was under pressure to give testimony for the prosecution in order to get a lighter sentence for his part in the robbery.

Our analysis of this issue, however, cannot be made in a doctrinaire fashion, speculating on the possible theories which defense counsel might have asserted in his closing argument. The trial of a case is an art form. Experienced counsel develop a feel for the subtleties or nuances of a case as it proceeds which may affect the style of advocacy or counsel's judgment on a given issue during trial. Matters which may appear to be insignificant on appeal or which may not even be reflected on the record such as the intensity of an opening statement, attitude of witnesses, mannerisms of the judge, demeanor of the jurors or the stage where direct or cross-examination of a particular witness terminated when the court recessed for lunch or adjourned in the afternoon may play, independently or collectively, an important part on the tactical choices made by a sensitive and skilled trial lawyer.

Espinoza's counsel is alleged to have performed unsatisfactorily only in failing to make a closing argument. In all other respects, including his knowledge of the law as contained in his pretrial motions, his voir dire of the jurors, opening statement, direct and cross-examination of the witnesses and objections to the evidence, he acted as a competent and diligent advocate.

Defendants have an arsenal of weapons available to them before and during trial for a meaningful defense. (See *People* v. *Huffman* (1977) 71 Cal.App.3d 63, 77-79 [139 Cal.Rptr. 264].) Mental straitjackets should not be placed on thoughtful defense counsel who wish to selectively choose which weapon is best for a defendant or which type of advocacy—low-key with emphasis on the facts, righteous indignation with emphasis on the equities or reliance on the technical demands of the law—is best designed to reach what they believe is a satisfactory result for their client. Appellate courts must recognize that in second-guessing tactical decisions reached by trial counsel, they chill the creativity of lawyers with a resultant standardized and mechanistic style of advocacy developed in every case as a matter of protection for the lawyer with questionable benefit to the client. Lawyers must retain the individuality of thought essential to the artisan in the performance of his craft.

With these considerations in mind, we cannot fault the decision of Espinoza's counsel. He told the judge at the conclusion of the prosecutor's opening argument that he decided not to address the jury. He had been thinking about that decision during the course of the trial; his decision was based on considerations that he had no evidence to establish a defense, and that the prosecutor had only spoken to the jury for about six minutes in a rather "quiet and drowsy way." Counsel added he did not want to give the prosecutor an opportunity to make a fiery rebuttal. Basically, defense counsel concluded that the prosecutor had undertried the case and the best response was to waive closing argument. Under the circumstances of this case, it was a judgment call well within his prerogative to make.

### The Jury Was Properly Instructed

■ Defendant further argues it was prejudicial error for the court to have failed to instruct *sua sponte* that accomplice's testimony relating to firearm use (§ 12022.5) was also subject to the requirement of corroboration (§ 1111). This argument is premised on the assumption that

the jury was told to differentiate between the accomplice's testimony, the conviction and the use of the firearm. This argument has no merit.

The court instructed in the exact language or substantially in accordance with CALJIC Nos. 3.10, 3.11, 3.12, 3.16 and 3.18 (all 1979 revisions), making it clear to the jury that in all respects Danny Baldwin was an accomplice, his testimony was subject to the rules requiring corroboration and that, as such, it was to be viewed with distrust. After the accomplice instructions, the court told the jury the defendant was charged with robbery, thereafter defining "firearm" and the phrase "used a firearm." The sequence of instructions and the instructions taken as a whole explained to the jury that *all* the testimony of the accomplice on whatever subject—the robbery and the weapon—required corroboration and was to be looked at with distrust. No distinction was made between the corroboration necessary to convict and for firearm use.

The fact there was a discrepancy between the testimony of the victim and accomplice as to the caliber of the firearm is of no consequence. The testimony of the victim stating defendant used a firearm was ample corroboration.

Judgment affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1980.