[Crim. No. 11433. Fourth Dist., Div. One. May 4, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
VAN ANTHONY WHITE, Defendant and Appellant.

COUNSEL

James R. Goff, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Yvonne H. Behart, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

STANIFORTH, J.—The jury convicted defendant Van Anthony White of forcible rape in violation of Penal Code section 261, subdivision 2.[1] At sentencing hearing, the trial court struck the prior offense proved and sentenced White to prison for the middle term of four years, with credit for time served. The court found neither mitigation nor aggravation. White appeals, contending (1) he was denied effective assistance of counsel at his preliminary hearing which prejudiced him upon trial, (2) the trial court erred in refusing to give a lesser included offense (battery) instruction, (3) the prosecutor was guilty of prejudicial misconduct in inferring that defense counsel was not being truthful with the jury, and (4) the trial court is charged with error in failing to consider evidence in mitigation and improperly considering other matters in imposing the sentence on White.

### Facts

White was an acquaintance of the rape victim Delpha F. He dated Delpha's roommate Pamela; he had a key to, frequently visited the apartment of and on occasion stayed overnight, slept with Pamela. On the day of the sexual assault on Delpha, White, Pamela, Delpha and White's friend Williams were at the apartment drinking wine, Scotch, and smoking marijuana. Pamela and Williams left, leaving Delpha and White alone. White began "talking crazy" to Delpha. He told her he wanted her to be his woman and he told her he was Jesus Christ. She became frightened by his action and went to the roommate's bedroom to use the telephone but found it unplugged. When she came back into the livingroom, White grabbed her by the hair and dragged her to her knees, then poured Scotch whiskey over her head. After a series of forceful and strange acts, White threatened to kill her, compelled her to take off her clothes and then forcibly engaged in two acts of sexual intercourse with her.

When Delpha heard the van Pamela and Williams were driving enter into the driveway outside the apartment, she pushed White away and went into the bathroom. The roommate and Williams came into the apartment and found Delpha nervous, shaking and crying. White told Pamela "I got some pussy from Delpha, and she's going to be my woman now."

---

[1] All references are to the Penal Code unless otherwise specified.

This further sequence of events followed: White directed Pamela to put on her judo outfit and informed her that Delpha was a new student, Pamela had to discipline her. White repeatedly asked Delpha if she was his woman. Each time she said no, he directed the roommate to strike Delpha. When the roommate did not obey his command, White hit her. She thereafter slapped and kicked Delpha at White's direction. At one point Delpha tried to jump out the window but White and the roommate stopped her. Delpha eventually called the police. She appeared tearful and depressed. A prompt medical examination revealed tenderness in the thorax, a small scratch on the left breast and tenderness on pelvic examination. Substantial evidence supports the doctor's conclusion there had been sexual entry. The physical findings were consistent with forcible intercourse.

White testified on his own behalf, denied the use of any force or threat in his "sexual activity" with the victim. He said he did not know whether there was penetration but admitted this was inconsistent with his testimony at the preliminary hearing where he said he believed he had had intercourse.

## DISCUSSION

### I

White charges he was denied effective assistance of counsel at his preliminary hearing which was prejudicial to his trial. ■ In determining effective assistance of counsel, the California Supreme Court in *People* v. *Pope* (1979) 23 Cal.3d 412, 422 [152 Cal.Rptr. 732, 590 P.2d 859], has abandoned the due process standard of *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], and substituted in its place this two-pronged test: "[A]ppellant must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense.

"Once an appellant has met these burdens, the appellate court must look to see if the record contains any explanation for the challenged aspect of representation. If it does, the court must inquire whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate." (23 Cal.3d at p. 425.) To satisfy the burden of proving ineffective assistance of counsel, it is not

necessary to show inadequacy throughout the entire proceedings. As stated by the Supreme Court in *Pope* "a single inexcusable error which withdraws a potentially meritorious defense is sufficient." (*Id.*, at p. 426, fn. 16.)

■ In the case at bench, White's attorney called him as a witness at the preliminary hearing. White contends there was no justification for such move (citing Amsterdam, Trial Manual for the Defense of Criminal Cases, ALI-ABA 1975, section 142, page 1-127). It is charged the attorney put White on the stand without prior discussion or knowledge as to what White would say. The magistrate in binding White over for trial observed:

"If there had been any doubt in my mind, and there wasn't, but if there had been, Mr. White took care of it.

"If I were prosecuting this case I probably wouldn't call Mrs. [F]. I'd just use Mr. White's own testimony." In the course of the trial, the district attorney used the preliminary examination transcript to impeach White before the jury. According to White's present counsel, this impeachment was the result of ineffective assistance of counsel at preliminary hearing and deprived White of a fair trial before the jury.

The Attorney General argues White failed to object to the use of the preliminary hearing transcript and therefore is precluded from raising the objection for the first time on appeal. Mr. Nareau, White's trial attorney, was not the attorney who represented White at the preliminary hearing. However, trial counsel did not make a motion to set aside the information on the ground White was denied any constitutional right to effective assistance of counsel at the preliminary hearing. He is therefore precluded from making the objection at this time. The failure to make a timely motion under section 995 to set aside the information bars White from now claiming irregularity in his preliminary examination. (*People v. Harris* (1967) 67 Cal.2d 866, 868-871 [64 Cal.Rptr. 313, 434 P.2d 609]; § 996; *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941]; *In re Hannie* (1970) 3 Cal.3d 520, 528 [90 Cal.Rptr. 742, 476 P.2d 110]; *People v. Wells* (1970) 13 Cal.App.3d 265, 276 [91 Cal.Rptr. 460]; *People v. DuBose* (1970) 10 Cal.App.3d 544, 550-551 [89 Cal.Rptr. 134].)

White seeks to avoid this rule, arguing he was also deprived of effective assistance of counsel in the superior court as well. He argues

Attorney Nareau's failure to make a timely section 995 motion cannot be set aside simply as a tactical decision pointing to the case of *People v. Corona* (1978) 80 Cal.App.3d 684, 706 [145 Cal.Rptr. 894]. There the Court of Appeal stated: "[E]ven the tactical and strategic determinations of trial counsel must have some rational support founded on reasonable, sound, legal principles and fully developed facts." (*Ibid.*) Here it is urged that there is simply no satisfactory explanation which would justify Nareau's action in failing to make a section 995 motion. Finally it is argued by defendant that the issue of effective assistance of counsel at the preliminary hearing is before the court because (1) it is a fundamental jurisdictional error (see *People v. Pompa-Ortiz, supra,* 27 Cal.3d 519) and (2) assuming arguendo there was a waiver, nevertheless a waiver occasioned by ineffective counsel is no waiver at all, citing *People v. Sundlee* (1977) 70 Cal.App.3d 477, 485 [138 Cal.Rptr. 834]. For the following reasons we conclude White's contentions lack merit.

■ Fundamental jurisdictional errors are those that relate to the "legal power to hear and determine a cause." (*People v. Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.) Ineffective assistance of counsel at the preliminary hearing does not fall within this category because it does not affect the power of the court to hear and determine a case. (Cf. *People v. Chavez* (1980) 26 Cal.3d 334, 348-349 [161 Cal.Rptr. 762, 605 P.2d 401].) In *People v. Harris, supra,* 67 Cal.2d 866, 869-870, the Supreme Court held failure to make a timely section 995 motion bars a defendant from challenging for the first time on appeal *lack* of counsel at his preliminary hearing. "The Legislature has provided defendants in criminal cases with a statutory opportunity to test the legality of their commitment, and it is not an undue burden to expect defendants who wish to raise this issue to proceed by filing a timely motion under section 995. When an illegally committed defendant pursues his statutory remedy, the courts will, without hesitation, invalidate his commitment. [Citation.] But to permit a defendant to question the legality of his commitment for the first time on appeal would enable him to secure a reversal of his judgment of conviction even though he was found guilty after an errorless trial." (*People v. Harris, supra,* at p. 870.) ■ The failure to make a section 995 motion may have been the result of a deliberate tactical decision by White's trial counsel.[2] As the Supreme

---

[2]The record before us does not indicate why a motion under section 995 was not made and White has failed to join a petition for habeas corpus to allow an evidentiary hearing on the issue of whether he was deprived of effective assistance of counsel at trial by trial counsel's failure to make such a motion. (See *People v. Pope, supra,* 23 Cal.3d 412, 426, 428.)

Court has pointed out: "[M]any defendants who may be illegally committed choose to forego their statutory remedy, recognizing that a successful motion under section 995 will operate only to delay the date of trial, since the prosecution remains free to file a new complaint and bring a new information." (*Ibid.*)

## II

If it be assumed *arguendo* White has established incompetence of counsel, yet White fails to meet the second of the *Pope, supra*, 23 Cal.3d 412, requirements. White does not specify in any particular in what fashion a crucial defense has been abandoned or lost by his testifying at the preliminary hearing. We are left to speculate as to what deleterious consequences descended upon White as a result of counsel's action, advice. White does not tell us what meritorious defense was lost as a result of his being called as a witness at the preliminary hearing. It is true the deputy district attorney used the preliminary hearing transcript to impeach White at some length when White took the stand in his own defense and told many different versions of the events in issue. Thus White was successfully *impeached* by his preliminary hearing testimony. This opportunity to impeach did not result from attorney incompetence but rather because of White's inability to tell a straight, consistent story. His trial testimony strayed from the account he related at the preliminary hearing in many detailed respects. However, in broad stroke, White's principal defense remained the same from the outset. He denied using force, claimed consent by the victim. There were a whole series of petty variances, changes in testimony, yet the principal metamorphosis concerned White's earlier admission of having intercourse with the victim. On trial, White admitted "sexual relations" but did not believe there was any "penetration." Thus White's claim of loss of a meritorious defense—when subjected to close scrutiny—is no more than a complaint about his own inability to tell the same story twice. Being caught in conflicting accounts may result in the loss of a defense, but to call it a "meritorious" defense stretches legal reasoning too far.

We conclude: (1) White has failed to meet his burden of establishing ineffective assistance of counsel, either at preliminary hearing or on trial. (See *People* v. *Pope, supra*, 23 Cal.3d 412, 425.) (2) White did not by timely section 995 motion in the superior court move to set aside the information. ▮ Absent such motion, we will not consider the claim of irregularity unless it is coupled with a showing by him of lack of a fair trial or that he has otherwise suffered prejudice from counsel incompetence. (3) He has made no showing of an unfair trial or preju-

dice resulting from his being called as a witness at the preliminary hearing. His contentions therefore are without merit.

## III

White next complains of instructional error. His trial counsel requested a lesser included instruction on battery but the trial court refused. The trial court must fully instruct the jury as to all applicable law. As was said in *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715, 716 [112 Cal.Rptr. 1, 518 P.2d 913]: "[This] obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation] but not when there is no evidence that the offense was less than that charged."

White points to his testimony to the effect he didn't believe it was possible for him to have had intercourse and argues this evidence raised the issue of battery; if the jury believed some of the evidence of sexual abuse of the victim, but that there was no penetration, White would not have been convicted of rape but at most of battery. Both the testimony of the examining physician as well as the victim was to the effect that there was forcible sexual intercourse. White stated on direct examination he did not *believe* there had been penetration or intercourse, yet he admitted this was inconsistent with his testimony at the preliminary hearing. He *then* believed he had had intercourse.

White flatly denies any threatening of Delpha or use of force on her in connection with the admitted "sexual activity." He testified the "discipline" (punishment) of Delpha, "had nothing to do with the sexual play ...." "This was all afterwards," he affirmed. The People chose not to charge White with a battery for this cruel and offensive touching that occurred after the sexual assault. He may not complain about this lack of a charge. It is the People's prerogative to plead or not to plead an offense.

We intuit White's theory to be that the physical abuse inherent in any involuntary rape was necessarily a battery. A similar argument was made unsuccessfully in *People* v. *Young* (1970) 9 Cal.App.3d 106, 109 [87 Cal.Rptr. 767], where the court said: "Accepting, *arguendo*, this contention, it follows that the evidence here establishing such a battery as a matter of law must also establish the commission of rape. Accordingly, if Young is guilty of battery, he is also guilty of the great-

er offense. It is not error to refuse to instruct the jury of their right to convict of lesser offenses included in the offense charged when the evidence shows that the defendant, if guilty at all, is also guilty of the crime charged. (*People* v. *Thomas*, 58 Cal.2d 121, 127; ... *People* v. *Asher*, 273 Cal.App.2d 876, 895 ....."

## IV

▮ White next asserts the prosecutor was guilty of misconduct in inferring that defense counsel was not being truthful. The comments complained of were as follows:

"Ms. ROWLAND:

". . . . . . . . . . . . . .

"I was watching Defense counsel when he was telling you what really happened in the bedroom that night. He wasn't watching you when he was telling you his version, which I feel is absolutely ludicrous of [*sic*] what the Defense feels happened that night in the bedroom. He couldn't look at you when he was telling you.

"MR. NAREAU: I believe she said 'Defense counsel,' your Honor. I wasn't in the bedroom that night.

"THE COURT: The remarks stand.

"Ms. ROWLAND: Mr. Nareau, I didn't interrupt you.

"MR. NAREAU: That was an incorrect statement.

"THE COURT: I'm leaving the statement as it is. I think the jury heard it. Don't break the train of thought. It makes it difficult."

The defense made no objection or request for admonishment. Thus, the trial court was given no opportunity to clarify or to admonish if that was required. The statement may quite reasonably have been understood as not referring to defendant's attorney but to defendant himself. However, assuming the prosecutor's ambiguous statement could also have been interpreted as referring to defense counsel, a timely formal objection and request for an admonition would have cured any potential harm. Therefore, "the contention must be rejected." (*People* v. *Green*

(1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) Finally if we assume error arising from the trial judge's comment that "[t]he remarks stand," the overwhelming evidence of defendant's guilt indicates that the harm, if any, from this ambiguous remark did not result in a miscarriage of justice. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

## V

■ Finally, the trial court is charged with improperly failing to consider evidence of mitigation consisting of a psychologist's report and the effect on White of drugs and alcohol he had allegedly ingested. There was no question but that the trial court had before it the evidence of White's bizarre behavior and use of drugs or alcohol. However, the question is whether it was duty bound to give a mitigating effect to these circumstances. In *People* v. *Simpson* (1979) 90 Cal.App.3d 919, 926, 927 [154 Cal.Rptr. 249], neither the probation office nor the trial court had considered defendant Simpson's alcoholism as a mitigating fact. Rather the trial court treated it as a fact in aggravation. Thus *Simpson* holds that the court must weigh this factor along with other relevant circumstances. (*Id.*, at p. 928.) In *People* v. *Covino* (1980) 100 Cal.App.3d 660, 669, 671 [161 Cal.Rptr. 155], neither the probation report nor the trial judge considered the fact that Covino had a drinking problem. White argues by analogy to *People* v. *Green, supra*, 27 Cal.3d 1, 24-25, that before dismissing mitigating factors, the trial court should have explained the basis for its determination that these factors do not rise to the level of mitigation of the sentence.

Here the record demonstrates the trial court referred to the factor of intoxication and received and read and considered the probation report and stressed it was considering all of the circumstances. He listened to comments made in reference to the report, lengthy oral argument upon the criteria set forth in rules 410 and 414 of the California Rules of Court. Based upon this full and complete hearing, the court noted White had a prior record, he would be a danger to society if not incarcerated, his conduct was a way of life to him and his offense was of a serious nature, he had used force in the commission of the offense and had committed the offense while on probation. Thus there was a wealth of factors which warranted not merely the middle term but the aggravated term in this case. The court did make an improper remark as to children fathered by White out of wedlock—this in connection with

White's irresponsible attitude to sexual involvement. The sentence imposed on White does not in any respect appear to be based or partially based upon the improper remark.

Judgment affirmed.

Cologne, Acting P. J., concurred.

**WIENER, J.,** Concurring.—In determining whether a trial lawyer performed in a manner to be expected of reasonably competent attorneys acting as diligent advocates, appellate courts should be cautious of the apparent intellectual acuity gained by hindsight. Although Monday morning quarterbacking may be stimulating, it is inappropriate when judging lawyers who deal in the demanding and uncertain turf of the courtroom. "Appellate courts must recognize that in second guessing tactical decisions reached by trial counsel, they chill the creativity of lawyers with a resultant standardized and mechanistic style of advocacy developed in every case as a matter of protection for the lawyer with questionable benefit to the client. Lawyers must retain the individuality of thought essential to the artisan in the performance of his craft." (*People* v. *Espinoza* (1979) 99 Cal.App.3d 44, 48 [159 Cal.Rptr. 803].)

Having said all of this, however, I still remain puzzled why trial counsel here did not object to White's testimony contained in the preliminary hearing transcript before the trial started on the ground White was denied effective counsel at his preliminary hearing. Had trial counsel done so, the court could have dealt with the imponderables presented in this appeal. Specifically, whether there is some explanation for what appears to be a most unusual decision in permitting his client to testify at the preliminary hearing and to admit an element of the charge for which he was ultimately convicted. If after an evidentiary hearing the court found White's preliminary hearing counsel to have been incompetent, White's testimony in the preliminary hearing transcript could have been suppressed. On the other hand, if counsel had acted competently, the testimony remains and White is properly denied the opportunity of fictionalizing a different scenario. In any event, although it was his own testimony which prejudiced White at trial, I do not believe this fact should immunize a lawyer who may have erred in the first instance by allowing his client to testify at the preliminary hearing. I interpret "potentially meritorious defense" to be a generic phrase which in our constitutionally structured adversary system will include a defendant's volunteered testimony which will furnish the

prosecution with an additional, but wholly unnecessary, opportunity to successfully impeach a defendant.

Although appellate courts continually wrestle "... with the growing problem of the dual attack on adequacy of counsel by both direct appeal and writ of habeas corpus" (*In re Lower* (1979) 100 Cal.App.3d 144, at p. 145 [161 Cal.Rptr. 24]), we do not have the benefit in this case of either the *in limine* proceeding described above or of what has now become routine—a petition for writ of habeas corpus to allow for an evidentiary hearing to resolve the difficult factual questions which are presented. Accordingly, in light of this record, I concur in the result.

A petition for a rehearing was denied May 19, 1981, and appellant's petition for a hearing by the Supreme Court was denied July 29, 1981.