92 Cal.Rptr.2d 313 (2000)
77 Cal.App.4th 1185
Clarence Lasalle ROSE, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent.
The People, Real Party in Interest.
No. B134032.
Court of Appeal, Second District, Division Six.
January 28, 2000.
Rehearing Granted February 24, 2000.
*316 Peter Gold, under appointment by the Court of Appeal, San Francisco, for Petitioner.
County of Los Angeles Office of the County Counsel, Lloyd W. Pellman, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.
No appearance by Real Party in Interest.

OPINION AND ORDER
GILBERT, P.J.
This is a case in which this court should not have to grant a writ of mandate. We must do so nonetheless because the superior court did not comply with our order that it conduct a hearing on a petition for writ of habeas corpus. The trial court's failure to follow our explicit order sets a poor example for litigants, lawyers, and the public. It undermines the administration of justice and fosters disrespect for the law.

FACTS
On February 3, 1996, Scott Riley and four friends met at a Long Beach bar in order to celebrate Riley's birthday. During the course of the evening, the Riley party drank a considerable amount of alcohol. At about 1 a.m., they were talking outside the bar when an Afro-American man and two women walked by. There was a brief exchange of words between the two groups.
Soon thereafter, several individuals confronted Riley's group. A man took a 9millimeter pistol from his pocket and pointed it at Randy Borgfield. Randy Borgfield turned and fled. More than a dozen shots were fired. Brian Borgfield, Randy's brother, was hit in the head by a 9-millimeter bullet and died. Two others were wounded.
The police conducted a photographic lineup. Three members of the Riley party identified petitioner Clarence Lasalle Rose as the assailant.
Rose was charged with murder, attempted murder, and assault. At the preliminary hearing, he was represented by the office of the alternate public defender. Rose's defense was based on alibi. Rose additionally claimed that the police department investigator was biased. The People's case depended largely upon eyewitness identification.
Prior to trial, Rose retained two private attorneys. One was a recent California State Bar admittee who had tried only one jury case. The other had been admitted in June of 1993. Neither attorney had ever tried a felony.
In opening statement defense counsel told the jury, "most likely we'll be out of here in a week, which is good for you. I hope it's good for Mr. Rose...." He was only half right. Closing argument followed closely on the heels of opening statement, a mere five days.
Sandwiched in between was the brief trial and no trial brief. One eyewitness testified that Rose was the person who had been walking with the two women and who had pulled a pistol from his pocket. Another witness stated he was intoxicated and therefore uncertain of Rose's identity as the assailant. A third witness testified that he did not believe Rose to be the assailant. It was night and each of these witnesses had been drinking just prior to the attack.
During closing arguments, the prosecutor referred to gang affiliation and purportedly misstated the testimony given by an alibi witness. Counsel failed to object to these statements.
The jury deliberated for six days and ultimately convicted Rose of murder in the first degree, attempted murder and assault with a firearm. He was sentenced to a term of 38 years in prison, plus 3 consecutive life terms.
Rose filed an appeal with this court. In addition, he submitted a petition for habeas *317 corpus in which he averred that his counsel was incompetent. (People v. Pope (1979) 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859.) In declarations attached to the habeas petition, both attorneys acknowledge numerous deficiencies.
Rose alleges his attorneys failed to: (1) conduct any pretrial investigation of prosecution witnesses; (2) challenge the photographic lineups on the ground that they were unduly suggestive; (3) use information of possible police bias garnered by the alternate public defender; (4) introduce admissible evidence of police bias at trial; (5) demonstrate a familiarity with the rules of evidence relating to hearsay and its exceptions; (6) call an expert witness on the subject of cross-racial identification; and (7) subpoena Rose's doctor.
After reviewing the record on appeal, it appeared that Rose's trial counsel likely failed to explore and preserve possible defenses. The allegations and declarations in Rose's petition for habeas corpus heightened our concern over the quality of representation. We therefore issued an order to show cause on the habeas petition and ordered that it be returnable in respondent court.
Respondent court acted with alacrity and denied the petition the day after Rose's appellate attorney filed a detailed 43-page traverse. The court's terse minute order was not enlightening. It merely stated that the court had read and considered the traverse; that Rose was "unrepresented" and not present in court; and that the petition for "Habeas Corpus is denied." The court held no hearing. It made no factual findings. It left us with not so much as a hint why the court ruled as it did.
Rose again sought relief from this court through a petition for habeas corpus. This required our treating the petition as one for mandate. We then issued an order to show cause for a writ of mandate.
In a letter to this court, county counsel acknowledged that the order of July 21, 1999, did not contain the proper recital of reasons. Counsel submitted a second letter, dated August 17, 1999, in which respondent court premised its denial of Rose's petition upon his failure to allege specific facts to sustain his arguments. In its transmittal letter, counsel stated that respondent court requests that its "letter be accepted and filed as a written return" from the court.

DISCUSSION

A. August 17, 1999 Letter from the Court
The letter from the court reflects a fundamental misunderstanding of the law governing habeas corpus and of the proper role of the court in a mandamus proceeding. It is not a proper return.
The court should be neutral, not an adverse party pleading its cause. "It is fundamental that an action must be prosecuted by one who has a beneficial interest in the outcome. In a mandamus proceeding, it is the parties [in the underlying proceeding], not the courts [whose rulings are challenged], which have a `beneficial interest' in the outcome of the case; the role of the respondent court is that of a neutral party." (Municipal Court v. Superior Court (Gonzalez) (1993) 5 Cal.4th 1126, 1129, 22 Cal.Rptr.2d 504, 857 P.2d 325, citations omitted.)
"The apparent premise underlying the court's decision[] in Gonzalez ... is that the court should not assume a partisan role. As noted in 8 Witkin, California Procedure (3d ed. 1985) Extraordinary Writs, section 148, page 789, `... if certiorari, prohibition or mandamus is sought against a court, the respondent judge, as in an appeal from a judgment, is a neutral party in the controversy between the plaintiff and defendant in the main action. The adverse party in that action is the real party in interest....' Such neutrality is also demanded by the duty of impartiality imposed upon judges by the California Code of Judicial Ethics (see canon 3)." *318 (Ng v. Superior Court (1997) 52 Cal. App.4th 1010, 1016, 61 Cal.Rptr.2d 49.)
As we stated in Omaha Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1266, 1273, 258 Cal.Rptr. 66, "Judges should be umpires rather than players."

B. The Defective Minute Order
The trial court's order of July 21, 1999, was irredeemably flawed. As we stated in In re Moss (1985) 175 Cal.App.3d 913, 921, footnote 5, 221 Cal.Rptr. 645, "Reticent superior court judges pondering the merits of habeas corpus petitions should keep in mind that a denial without a statement of reasons is contrary to the plain requirements of California Rules of Court, rule 260(e)."[1]
A recitation of grounds aids and preserves "confidence in the decision-making process `by helping to persuade the parties [and the public] that ... decision-making is careful, reasoned and equitable.' [Citation.]" (In re Podesto (1976) 15 Cal.3d 921, 937, 127 Cal.Rptr. 97, 544 P.2d 1297 [trial court required to issue a brief statement of grounds when denying an order for bail on appeal].) It also affords the petitioner the opportunity to assess intelligently whether to seek further review. (In re Sturm (1974) 11 Cal.3d 258, 268-270, 113 Cal.Rptr. 361, 521 P.2d 97 [prison board must give its reasons for denial of parole]; People v. Ramirez (1979) 25 Cal.3d 260, 276, 158 Cal.Rptr. 316, 599 P.2d 622 [inmate excluded from California Rehabilitation Center entitled to statement of reasons].) When habeas is sought in an appellate court, a brief statement of reasons by the trial court aids the appellate court in its review of the merits of the petition. (In re Jackson (1985) 39 Cal.3d 464, 477, 216 Cal.Rptr. 760, 703 P.2d 100; see also Topanga Assn. for a Scenic Community v. County of Los Angeles (1974) 11 Cal.3d 506, 513-518, 113 Cal.Rptr. 836, 522 P.2d 12.)

C. Ineffective Assistance of Counsel
As Rose points out, a defendant has a constitutional right to be represented by effective counsel. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15; Gideon v. Wainuright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.) The trial judge has a duty "to protect the defendant's right to a counsel who is effective." (Smith v. Superior Court (1968) 68 Cal.2d 547, 559, 68 Cal.Rptr. 1, 440 P.2d 65.)
An informed tactical decision made by defense counsel does not constitute ineffective assistance of counsel. (In re Ibarra (1983) 34 Cal.3d 277, 284, 193 Cal. Rptr. 538, 666 P.2d 980.) As a corollary rule, "ineptitude or lack of industry" on the part of counsel falls well short of the mark. (In re Saunders (1970) 2 Cal.3d 1033,1042, fn. 7, 88 Cal.Rptr. 633, 472 P.2d 921.)
"`[W]hile acknowledging the wide latitude and discretion necessarily vested in trial counsel in the area of tactics and strategy, we stress that the exercise of that discretion must be a reasonable and informed one in the light of the facts and options reasonably apparent to counsel at the time of trial, and founded upon reasonable investigation and preparation.' [Citation.]" (In re Hall (1981) 30 Cal.3d 408, 426, 179 Cal.Rptr. 223, 637 P.2d 690.)
After reading the petition and return, we are left to ponder a number of questions that were not discussed by respondent court.
The surviving members of the Riley party were the only eyewitnesses to the crime. As such, they were the key prosecution witnesses. Were there sound tactical reasons for defense counsel to not conduct any pretrial investigation of possible bias, intoxication, and confusion on the part of the prosecution's identification witnesses?
*319 As part of their meager defense, Rose's attorneys offered lay testimony that Rose had been shot in the leg on a prior occasion, and thus walked with a noticeable limp. Although this testimony was helpful to Rose, its value could have been enhanced had they called Rose's doctor. Rose's doctor was prepared to testify that a person in Rose's medical condition could not have committed the murder and then escaped on foot. If after reasonable investigation, a defense attorney determines that defense witnesses are untrustworthy, unsavory, or unconvincing, he or she may make an informed decision not to call them. (In re Hall, supra, 30 Cal.3d at p. 417, 179 Cal.Rptr. 223, 637 P.2d 690.) Did the defense make an informed decision when it failed to have Rose's doctor attest to Rose's physical condition?
"Although the state and its representatives have no interest in convicting innocent persons, it would be unrealistic to assume that once charges have been levelled [sic] against a specific individual the police will search as zealously for exculpatory evidence as they will for information that might lead to conviction...." (In re Hall, supra, 30 Cal.3d at p. 425, 179 Cal. Rptr. 223, 637 P.2d 690.) Should counsel have investigated for evidence of alleged bias on the part of the Long Beach Police Department?
"`The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification.'" (People v. McDonald (1984) 37 Cal.3d 351, 363, 208 Cal.Rptr. 236, 690 P.2d 709, citing United States v. Wade (1967) 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149, 1158.) Stress and cross-racial factors can affect the accuracy of identification. (Id., at p. 362, 208 Cal.Rptr. 236, 690 P.2d 709.) For purposes of impeachment, should the defense have hired an expert witness to testify to the difficulties of cross-racial identifications?
"Since an objection to the identification evidence would have been adjudicated outside the presence of the jury," (People v. Nation (1980) 26 Cal.3d 169, 179, 161 Cal. Rptr. 299, 604 P.2d 1051), did the defense explore the possibility of challenging the police lineup as being unduly suggestive, and move to exclude? If not, what possible tactical reason could the defense have had for failing to do so?
These questions leave us to finally ask whether defense counsel's alleged failures deprived Rose of a potentially meritorious defense.
The petitioner in a habeas proceeding bears the initial burden of demonstrating that he or she has been deprived of effective assistance of counsel. (People v. Haskett (1990) 52 Cal.3d 210, 248, 276 Cal.Rptr. 80, 801 P.2d 323.)
Rose had recited specific facts in his petition and had thereby made a threshold showing of ineffective assistance that is material and sufficiently adequate. (People v. Duvall (1995) 9 Cal.4th 464, 475, 37 Cal.Rptr.2d 259, 886 P.2d 1252; see also, e.g., In re Hitchings (1993) 6 Cal.4th 97, 24 Cal.Rptr.2d 74, 860 P.2d 466; In re Marquez (1992) 1 Cal.4th 584, 3 Cal.Rptr.2d 727, 822 P.2d 435; In re Cordero (1988) 46 Cal.3d 161, 249 Cal.Rptr. 342, 756 P.2d 1370; In re Martin (1987) 44 Cal.3d 1, 241 Cal.Rptr. 263, 744 P.2d 374; People v. Ledesma (1987) 43 Cal.3d 171, 233 Cal. Rptr. 404, 729 P.2d 839; In re Hall, supra, 30 Cal.3d 408, 179 Cal.Rptr. 223, 637 P.2d 690.)
The burden then shifted to the People to allege "facts tending to establish the legality of the challenged detention." (People v. Duvall, supra, 9 Cal.4th at p. 476, 37 Cal.Rptr.2d 259, 886 P.2d 1252; People v. Romero (1994) 8 Cal.4th 728, 738-739, 35 Cal.Rptr.2d 270, 883 P.2d 388.) Petitioner may respond to the return by filing a traverse in which he may deny the factual allegations set forth in the return. (People v. Duvall, supra, at p. 477, 37 Cal.Rptr.2d 259, 886 P.2d 1252.)
*320 The return and traverse to the order to show cause are the means by which issues are joined and defined. (People v. Pacini (1981) 120 Cal.App.3d 877, 884, 174 Cal.Rptr. 820.) Once joined, the truth of disputed allegations is to be determined through the means of an evidentiary hearing. (People v. Duvall, supra, 9 Cal.4th at p. 478, 37 Cal.Rptr.2d 259, 886 P.2d 1252; People v. Romero, supra, 8 Cal.4th at p. 740, 35 Cal.Rptr.2d 270, 883 P.2d 388.)
Seemingly lost upon respondent court was the import of our order causing the writ to be returnable in that court. Our initial issuance of an order to show cause reflects a preliminary determination by this court that the allegations made by Rose, if proven, state a prima facie case for relief. "When we order the respondent to show cause before the superior court why the relief prayed for in a petition for habeas corpus should not be granted, we do more than simply transfer the petition to that court and more than simply afford the petitioner an opportunity to present evidence in support of the allegations of the petition; we institute a proceeding in which the issues of fact are to be framed and decided...." (In re Hochberg (1970) 2 Cal.3d 870, 876, fn. 4, 87 Cal.Rptr. 681, 471 P.2d 1.)

D. The Requirement of an Evidentiary Hearing
Claims of ineffective assistance often lend themselves to resolution in an evidentiary hearing. (In re Visciotti (1997) 14 Cal.4th 325, 335-336, 58 Cal.Rptr.2d 801, 926 P.2d 987 [referee appointed to resolve disputed factual matters of attorney incompetence]; People v. Duvall, supra, 9 Cal.4th at p. 486, 37 Cal.Rptr.2d 259, 886 P.2d 1252 [referee appointed in order "to determine the truth or falsity of ... factual allegations regarding counsel's failure to investigate and present a defense based upon petitioner's alleged diminished mental state"]; People v. Haskett (1982) 30 Cal.3d 841, 854-855, 180 Cal.Rptr. 640, 640 P.2d 776 [examination may reveal that an attorney is ignorant of the law]; In re Hall, supra, 30 Cal.3d at pp. 430-432, 179 Cal.Rptr. 223, 637 P.2d 690 [following an evidentiary hearing, defense attorney's tactical decision was found to be "dubious"]; People v. Pope, supra, 23 Cal.3d at p. 426, 152 Cal.Rptr. 732, 590 P.2d 859 ["there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of'].)
In addition, hearings are vital to the decision-making process in that litigants are afforded "their only opportunity to orally argue their case and to respond to the court's inquiries through the give-and-take of questioning...." (Mediterranean Const. Co. v. State Farm Fire and Cas. Co. (1998) 66 Cal.App.4th 257, 264, 77 Cal. Rptr.2d 781; see also Moles v. Regents of University of California (1982) 32 Cal.3d 867, 872, 187 Cal.Rptr. 557, 654 P.2d 740.)
The ever-growing number of individuals serving extensive sentences in penal institutions poses special problems for our courts. As observed by Justice Mosk in his concurring opinion, "[T]he increasing length of prison terms for violent crime also requires a highly reliable fact finding procedure in determining guilt...." (People v. Jones (1998) 17 Cal.4th 279, 321, 70 Cal.Rptr.2d 793, 949 P.2d 890.)
For the same reasons, courts have the formidable task to properly review the multifaceted arguments tendered by an ever-increasing number of habeas petitioners. (People v. Duvall, supra, 9 Cal.4th at pp. 474-475, 37 Cal.Rptr.2d 259, 886 P.2d 1252.) These petitioners generally have had a trial and have been found guilty of some crime.
On the other hand, the "`Great Writ'" can be abused. (McCleskey v. Zant (1991) 499 U.S. 467, 489, 507, 517-518, 111 S.Ct. 1454, 1477, 1482-1483, 113 L.Ed.2d 517, 541, 553, 560-561 (dis. opn. of Marshall, J.); In re Clark (1993) 5 Cal.4th 750, 769, 21 Cal.Rptr.2d 509, 855 P.2d 729; *321 In re Gatts (1978) 79 Cal.App.3d 1023, 1035, 145 Cal.Rptr. 419.) Many claims of ineffective assistance of counsel arise from tactical decisions rather than from the denial of fundamental rights. (People v. Knight (1987) 194 Cal.App.3d 337, 344, 239 Cal.Rptr. 413 [defendant's "buyer's remorse" is not grounds to set aside a plea]; People v. Potter (1978) 77 Cal.App.3d 45, 49, 143 Cal.Rptr. 379 [defendant accused his defense attorney of "running" for the office of district attorney].) "In determining whether a trial lawyer performed in a manner to be expected of reasonably competent attorneys acting as diligent advocates, appellate courts should be cautious of the apparent intellectual acuity gained by hindsight. Although Monday morning quarterbacking may be stimulating, it is inappropriate when judging lawyers who deal in the demanding and uncertain turf of the courtroom...." (People v. White (1981) 118 Cal.App.3d 767, 778, 173 Cal. Rptr. 575.)
This insight is particularly significant because habeas petitioners receive priority over other litigants and may interfere with the orderly disposition of the court's calendar.
It is therefore no surprise that many applications claiming ineffective assistance of counsel are seldom granted. "Nor will the court consider on the merits successive petitions attacking the competence of trial or prior habeas corpus counsel which reflect nothing more than the ability of present counsel with the benefit of hindsight, additional time and investigative services, and newly retained experts, to demonstrate that a different or better defense could have been mounted had trial counsel or prior habeas corpus counsel had similar advantages...." (In re Clark, supra, 5 Cal.4th at p. 780, 21 Cal.Rptr.2d 509, 855 P.2d 729.)
Courts, nonetheless, must not assume that all petitioners in habeas proceedings are attempting to "throw dust in [their] eyes ... or [to] hoodwink a judge who is not over-wise", and to perjure themselves "as a matter of course."[2] Just as a theater critic must see the play before writing a review, judges must carefully consider the evidence before deciding a case. The lifeblood of our judicial institutions depends upon judges rendering decisions that are the product of a reasoned and objective view of the law and of the facts.
The consideration of a habeas petition is, therefore, to be regarded as something more than a formal ritual or a procedural nuisance. This caveat is particularly significant here. We, as an appellate court, have remanded a habeas petition for hearing in which petitioner, facing life sentences, has raised what may be meritorious objections concerning the quality of his representation. The trial court must do more than perfunctorily peruse the petition. The trial court apparently skimmed the petition so quickly that it neglected to note that Rose was represented. Even if he had been unrepresented, as the court erroneously declared, his petition was entitled to no less consideration. "An imprisoned defendant is entitled by due process to reasonable access to the courts...." (In re Sanders (1999) 21 Cal.4th 697, 719, 87 Cal.Rptr.2d 899, 981 P.2d 1038.)
"Efficiency is not more important than preserving the constitutional integrity of the judicial process." (Aetna Life Ins. Co. v. Superior Court (1986) 182 Cal.App.3d 431, 437, 227 Cal.Rptr. 460.) Neither a heavy caseload, nor disaffection with our order, justified the trial court's curtailment of Rose's right to an evidentiary hearing and due consideration of his habeas petition.
Rose, like Kafka's condemned prisoner, Josef K., has been left to wonder, "`Where was the Judge whom he had never seen?'" (Franz Kafka, The Trial (1935) (Willa and *322 Edwin Muir, Schocken Books 1992) at pp. 228-229.)
Although the trial judge is capable of hearing this matter, it is possible the appearance of impartiality may have been compromised. In the interests of justice we therefore order that the evidentiary hearing be heard by a different trial judge. (Code Civ. Proc, § 170.1, subd. (c).)
Let a writ of mandate issue commanding respondent court to vacate its order of July 21, 1999, and hold an evidentiary hearing in conformance with the views expressed in this opinion.
The order to show cause, having served its purpose, is dissolved.
YEGAN, J., and COFFEE, J., concur.
NOTES
[1] "Any order denying a petition for a writ of habeas corpus shall contain a brief recital of the reasons for the denial." (Cal. Rules of Court, rule 260(e).)
[2] ("Lord Chancellor's Song," Sir William Gilbert, Iolanthe (1882), Act I.)